PHYFE vs. WARDELL & WOOLLEY.

In the case of church leases, and leases from the trustees of charities, &c. where the lessors are in the practice of giving new leases to their tenants from time to time, upon the payment of a renewal fine or a reasonable addi-tion to the rent, the tenant, in regard to third persons, has a vendible in-terest, in such imperfect right of renewal, which a court of equity will re-cognize and protect, although such renewal depends upon the mere volition of the lessors.

If a person, who has a particular or special interest in a lease, obtains a re-newal of the lease in consequence of his being in possession as tenant, or from his having such special interest, the renewed lease is in equity con-sidered as a mere continuance of the original lease, for the protection of the rights of all parties who had any legal or equitable interests in the old lease.

Where the complainant as the lessee of premises, a part of which had been let by him to an under tenant, contracted with the defendants to sell his inter-est in the premises to them, for the purpose of enabling them to obtain a renewal, without prejudice to the rights of the sub-lessee ; and the defend-ants, in consequence of such agreement, obtained a new lease of the premises in their own names, and then evicted the sub-lessee, by which the

complainant was compelled to make good the loss or damage sustained by him; *Held*, that the complainant was entitled to a decree for a specific performance of the agreement, and to be indemnified against the claim of the sub-lessee; and that he had a lien, for the unpaid purchase money, upon the legal interest in the premises, which the defendants had acquired under their new lease.

This was an appeal from an order of the vice chancellor of May 25. the first circuit, overruling a demurrer to the complainant's bill. The complainant stated in his bill that the owner of the premises, the corporation of St. Michael's church at Bloomingdale in the city of New-York, leased to P. Fowler, lot No. 38, on the north side of Vesey street, for the term of twenty-one years from the 25th of March, 1811, at the yearly rent of $150; which lease, by divers mesne assignments, came to the complainant; that on the first of February, 1832, the complainant leased part of the premises, for one year from the first of May then next, to D. Decker; that it always had been the custom of the corporation of the church, upon the expiration of any of their leases, to grant renewals of the same to the lessees, or their assignees, who were in possession of the premises, in preference to any other person; that the privilege of renewal formed a valuable appurtenance to the leases, and always entered into the consideration for the sale or transfer thereof, and was the primary object which the defendants had in view in making the purchase of the complainant's interest in the unexpired term in his lease, as thereafter mentioned; that the defendants applied to the complainant to sell to them his lease and interest in the premises, and offered to take the same subject to the lease for one year to D. Decker, and to assume the complainant's responsibility to D. Decker under the sub-lease, and also to procure for the complainant another lot for the storage of his lumber and materials then on the premises; that on the 9th of March, 1832, the complainant agreed with the defendants to sell and assign his unexpired term in the lease and premises, and his right to renewal, to them, for the sum of $2650, subject to the lease to D. Decker; that a memorandum in writing was then made and signed by both parties, by which the defendants agreed to purchase the complainant's lease of the premises, with the buildings on the lot, for the said sum of $2650, to be paid the

first week in May thereafter, when the possession and title was to be given by him ; that at the time of executing the written memorandum of the agreement, the complainant objected that his right to a renewal of the lease, and the engagement of the defendants to assume his responsibility to Decker, were not mentioned therein ; to which objection they replied that it was admitted and well understood, and that no advantage would be taken of such omission ; that the complainant was satisfied with that assurance, supposing he was dealing with honest and honorable men ; that at the time of the agreement, neither of the parties had examined the lease, or knew the period of its termination, as the defendants had determined, if they should purchase, to apply immediately for a renewal of the lease ; that shortly after the sale to the defendants, the treasurer of the church corporation informed the complainant that the lease had expired, and that if he wished for a renewal, the corporation were ready to fix upon the terms of such renewal ; that he informed the treasurer of the sale, in the presence of one of the defendants, and requested that the renewal lease might be made in their names, which was agreed to ; and the terms of the renewal were to be fixed upon by the corporation and the defendants ; that a new lease was accordingly given to the defendants, for the further term of twenty-one years from the time of the expiration of the old lease ; that after the complainant had directed the new lease to be given to the defendants, but before the delivery of such lease, he discovered, by conversing with one of the defendants, that they did not intend to fulfil their agreement with him ; and that he immediately notified the treasurer of the corporation, and requested that the lease might not be delivered until they had performed their agreement, but the same was delivered, notwithstanding such request ; that the complainant delivered up possession of a part of the premises, according to the agreement ; and that the defendants had ejected Decker from the residue thereof, who claimed damages from the complainant in consequence of such eviction. The complainant therefore prayed for a specific performance of the written agreement, offering to perform the same on his part, if any thing

1835.

Phyfe
v.
Wardell.

remained to be done, and that the defendants might be decreed to pay the purchase money, and indemnify him against Decker's claim for damages, or that they might be decreed to assign to the complainant the renewed lease; and for general relief.

*D. Selden*, for the appellants. The complainant had no legal or equitable right which he could have himself enforced against the church. Had he then a right which he could assign to another? Had not the church a right to make a lease to whom it pleased, and upon what terms it pleased? Would this court have enjoined the treasurer from delivering the lease to the defendants, had application for such an injunction been made, upon the state of facts as they are represented to have existed previous to the delivery of the lease?

There is no allegation in the bill that the treasurer acted contrary to his authority from the trustees, in not complying with the request of the complainant to withhold the lease. On the contrary, the whole intercourse and negotiation was carried on with, and completed by him. He had full authority. The object of the bill is to compel the defendants to complete their contract. If the contract should be considered as that reduced to writing, so far as the defendants are concerned, it is to pay $2650 for the lease and buildings. If the oral communications which passed between the parties constitute part of the contract, in addition to paying the money, the defendants were to assume the complainant's responsibility to Decker, arising out of the letting to him for one year. The right of Decker to claim the occupation for the year could not be changed by an assignment of the lease, if the lease had had that time to run. As to the under tenant, the assignees of the complainant stood in the same situation as the lessee, who was the landlord of the under tenant. At the time the lease was agreed to be sold, it was not understood by either party that it had run out.

This court could not acquire jurisdiction of the case from the fact that the defendants fraudulently undertook to avoid the payment, any more than if they had only refused payment after the complainant had fulfilled his part of the contract. A

court of law sustains an action on a contract, whether the plaintiff performs or only offers to perform his part of the contract, or is prevented by the defendant from performing his part of the contract. (*Blackwell* v. *Nash*, 1 *Strange*, 533. *Hotham* v. *The East India Co.*, 1 *T. R.* 638.) The bill presents two questions : 1. Whether there is a binding agreement made out by the bill ; and 2. Whether that agreement can be enforced in this court. The agreement, if made at all, was verbal, and was entered into at the time of making the written contract. Admitting the agreement to allow Decker to continue as the sub-tenant was binding, there is no allegation that this part of the agreement has been violated. The bill says Decker has been ejected, but not that he has been ejected contrary to his tenancy. Equity will not presume illegal force, or an ejectment contrary to the terms of the contract of letting, but the contrary. If the nature of the arrangement relative to Decker's tenancy is an agreement of indemnity, the court will not require indemnity until some act is charged to have been done, or omitted, which renders the complainant liable. No such charge is made in this case. The parol contract, as stated in the bill, is, that the defendant assumed the responsibility of the complainant to Decker. No violation of the contract is set forth.

Again ; the agreement was invalid. Two rules bear upon this question. *First.* That which is fixed by the statute of frauds, which renders all assignments of leases, and all contracts relative to any interest in or concerning lands void, unless reduced to writing. The parol agreement was to assume the responsibility ; in other words, the relation agreed upon between the complainant and Decker, of landlord and tenant. *Second.* The general rule of evidence, that defects in contracts reduced to writing cannot be supplied by parol. A contract cannot rest partly in writing and partly in parol. Hence, in the case of *Parkhurst* v. *Van Cortland*, (14 *John. Rep.* 33,) the written memorandum, which was set forth in the bill, was rejected entirely as a part of the contract ; and the decree in that case was grounded upon the part performance of a parol contract by the complainant. In that case, it appears also that the parol contract, and the written memo-

andum, were made at different times. In the present case they are concurrent, or rather the parol contract charged to have been made was part of the negotiation, which is alleged to have been agreed to, but not inserted in the written agreement. This rule is so rarely departed from, either at law or equity, that it is unnecessary to examine the exceptions. They are all, so far as they relate to the circumstances of a case like the present, included within the exceptions allowed to the rule as fixed by the statute : viz. that a party, who has made a verbal contract, and allows the party with whom he has contracted to go on with the performance of his part of the contract, shall not escape in equity from doing what he agreed to do. To allow him to do that, the court say, would be tantamount to a fraud. (2 *Hovendon on Fraud*, 33.) The parol agreement, in such cases, is not binding, but the part performance gives the claim to relief. If the contract exists, partly in writing and partly in parol, the performance which enables the party to claim relief must be of something called for by the parol agreement. If all that was done was strictly in accordance with what the writing called for, it cannot be deemed a part performance of the parol agreement, or afford any ground of claim under it. But what acts have been done by the complainant, in performance of any part of this contract ? *First.* The surrender of the portion of the premises occupied by him. *Second.* A request to the trustees to make out the lease to the defendants. Both of these acts were called for by the written, and not the parol contract. No act has been done by either party, in part performance of any contract entered into to protect the rights of Decker as under tenant.

If the reasoning of the vice chancellor is correct, in what possible case does the statute protect a party from liability ? It was made to save him from fraud and perjury. Part performance of the written agreement cannot give validity to the parol contract, so as to obtain relief, in equity, founded upon the latter. The part performance required in equity is of the parol contract. Without this, it cannot be proved, and can have no *status in curia.*

Again; if we consider the contract binding, as a whole, is it a case for equity? Why not go to law? The relief asked for, (all the relief which can be granted,) is in the nature of damages. (*Cox* v. *Butler*, 1 *P. Wms.* 570. *Lester* v. *Cooper*, 3 *Atk.* 383. 2 *P. Wms.* 594.) The jurisdiction of equity is never exercised to decree compensation singly, without other relief. (*Newham* v. *May*, 13 *Price*, 749. *M'Clel. Rep.* 511. *Berry* v. *Tracy*, *Eq. Cas. Abr.* 163. *Lannoy* v. *Wherry*, 4 *Bro. P. C.* 630.) The agreement of the defendant to indemnify against Decker, does not give rise to any equitable jurisdiction in this case. If this is otherwise, how far does the rule extend? Has a second endorser, after protest, a right to call a prior endorser into equity to indemnify him against the holder's suit? Has the grantee a right to call his grantor into equity to indemnify him against an outstanding title? Has the sheriff a right to call the sureties in a bond of indemnity into this court, to indemnify him against damages for an unlawful seizure? These are cases of admitted indemnity. Does a stronger case for equity arise, where the right to indemnify is doubtful? (*See Flint* v. *Brandon*, 8 *Vesey*, 159. *Everington* v. *Aynsley*, 2 *Bro. C. C.* 341.)

Again; the agreement proved was only a contract for the sale of a good will. Chancery does not enforce such contracts, but leaves the parties to their remedy at law. (*Baxter* v. *Conelly*, 1 *Jac. & Walk.* 576. 2 *Kent's Com.* 468. 2 *Ball & Beat.* 303.) If, by the terms of the contract, it was for the sale of more, the complainant had not the power to perform it on his part; and this court does not modify an agreement, and compel the defendant to perform it. (*Viscount Clermont* v. *Jasburgh*, 1 *Jac. & Walk.* 112. *Feldes* v. *Hooker*, 2 *Meriv.* 424. *Wood* v. *Rone*, 2 *Bligh*, 595. *King* v. *Wightman*, 1 *Anst.* 80.)

*J. Duer*, for the respondent. Phyfe has lost the possession and enjoyment of a valuable property, solely from the confidence which he reposed in the honor and integrity of the defendants; and they, by the abuse of that confidence, have acquired what he has lost. The supposition that he can have no redress at law or in equity would be a libel on the law, or

1835.

Phyfe
v.
Wardell.

upon its administration. The respondent is entitled to relief, either by a specific performance of the contract set forth in the bill, or by way of compensation for the injury which he has sustained by the fraud of the defendants. As a specific performance of the agreement, the relief which he claims is a decree for the payment of the $2650 which the defendants stipulated to pay, and a suitable indemnity against the claims of Decker. There is no weight in the objection that the court has no jurisdiction, on the ground that the complainant had an adequate remedy upon the contract at law. This objection is founded in an entire misconception of the reason on which the aid of the court is invoked. Admitting it to be true that a court of equity cannot award damages for the breach of a contract, (although even to this rule there are many exceptions,) it by no means follows that a decree cannot be made for the payment of a sum of money, as a specific execution of a contract in relation to lands. The jurisdiction of chancery extends to all cases of specific performance, whether the relief be sought by the vendor or the purchaser. A contract is executed when it is carried into effect according to its terms. And a decree compelling the payment of the purchase money, is as truly a decree for a specific performance, where the title has been already given, as a decree compelling the execution and delivery of a deed, where the purchase money has been paid. Where the contract is valid under the statute of frauds, the vendor has always a plain remedy at law ; yet, even in such a case, equity has a concurrent jurisdiction. (1 *Mad. Ch. Rep.* 286. *Finch's Rep.* 420. *Lewis* v. *Lechmere*, 10 *Mod.* 503.)

But this complainant was wholly without remedy at law. No suit could be brought, except upon the written contract ; and in a court of law, evidence to enlarge or vary the terms of that agreement would be inadmissible. To entitle the complainant to recover, it would be necessary to prove performance on his part, or an offer to perform, or that performance was prevented by the act of the defendants ; and no such proof could be given. The written contract is for the sale of a subsisting lease, and the title which the complainant agreed to make, on the first of May following the date of the contract,

was an assignment of that lease; and the expiration of his term before that day rendered the execution of the contract impossible. The truth is, as the bill admits, the agreement was framed in a mutual error as to the duration of the lease; and it cannot be doubted that the defendants, when the mistake was discovered, had a perfect right to consider themselves discharged. They were not bound to accept of an assignment of any other lease than that to which the contract referred; and if they had chosen to place themselves on this ground, when they were informed that the term had expired, the complainant could not have enforced the agreement, either at law or in equity. Their liability is founded entirely on their subsequent acts, of which at law no evidence could be given. But it may be asked, do we not seek by the bill the specific performance of the written agreement? Certainly not. The agreement we seek to enfore is that into which the defendants entered, after they were informed that the lease had expired, and after the treasurer of the church had offered a renewal to the complainant, on such terms as might be agreed on. They then agreed, in consideration that he would surrender the possession and permit the new lease to be made out in their names, or in the name of one of them, to pay him the sum before stipulated, and to assume his responsibility to Decker. This agreement, not being in writing, is void at law; and it is only on the ground of its part performance, by the actual delivery of the possession and of the new lease, that it can be enforced in equity. That this agreement and its part performance are sufficiently charged in the bill to render it binding in equity, it is conceived, will not be doubted. The bill states that the complainant informed the treasurer of the church, in the presence of one of the defendants, that he had sold to them his interest in the premises, and he therefore wished that their names, or the name of one, at their election, should be substituted in the new lease then to be granted; and that the defendants well knew and understood that these directions were given in the full faith and confidence that they would pay the consideration money mentioned in the agreement, and assume Phyfe's responsibility to Decker. The defendants, by accepting the possession and the new

lease, with this knowledge of the expectations of Phyfe, in effect agreed to fulfil them.  If they did not mean this, it was their duty then to have undeceived him ; nor can they deny that they intended an agreement,' without admitting that they contemplated a fraud.  The morality of a court of equity is not technical, or verbal, or common.  The court follows the precepts of a pure and enlightened conscience, and hence its established and familiar doctrine, that the silence of him who is bound to speak is equivalent to an express assent.

Were it even true that the plaintiff would have a remedy at law for the recovery of the purchase money, it is plain that he could not, in a court of law, obtain an indemnity, either by way of damages or otherwise against the claims of Decker.  This obligation is no part of the written contract, and it is only in this court, and upon principles of equity, that evidence can be admitted to supply the defect and correct the mistake.  The counsel for the appellants assert that a court of equity can in no case decree the payment of a sum of money in pursuance of a contract, because such a relief is in the nature of damages ; and that the jurisdiction of the court is never exercised to decree compensation singly, without other relief.  Most of the cases referred to by the appellant's counsel are cases of agreements in relation to personal chattels, which, it is true as a general rule, will not be enforced in equity ; and the residue are cases where the compensation was sought as damages for the breach of a contract, and where the party had a certain remedy at law.  Were the doctrine of the counsel true, a decree for a specific performance could never be made in favor of a vendor, even where, from the invalidity of the contract under the statute of frauds, he could have no remedy at law.  Yet it so happens that the leading cases, where relief has been granted on a part performance, are cases of this character, and the relief has consisted solely in compelling the defendant to pay the purchase money ; that is, according to the reasoning of the counsel, to make compensation by way of damages. (*See Lacon* v. *Mertins*, 3 *Atk.* 1.)  The agreement therefore, and the authorities of the counsel, are sufficiently answered by saying that a decree for the purchase money is not a decree for compensation.

in the sense of the cases cited ; and it is only where the party has a remedy at law, that even compensation by way of damages is refused.

It is objected that as the complainant's lease had expired, the only consideration for the agreement of the defendants was the transfer of a good will, and that chancery will never execute contracts of this description. The meaning of the rule that equity will not execute a contract for the sale of a good will, is merely this : that the purchaser will not be compelled to take a conveyance giving him no title in law or equity, but only the reasonable hope or expectation of such title. The cases quoted would be analogous and conclusive, if the plaintiff, having remained in possession without obtaining a renewal of his lease, was seeking to compel the defendants to pay the consideration money upon the mere transfer of his possession, without giving them any title at all. That the transfer of a good will is a valuable consideration, has been frequently decided ; and it is a novel doctrine, that where the transfer has been made, and the purchaser by means of it has obtained the title he sought, he is not liable to make any compensation in law or equity. For this is the extent of the argument, as applied to the present case. But the consideration of the present contract was not the mere transfer of a good will. The treasurer of the church had actually offered a renewal to the complainant ; and the bill avers that the very same lease which the defendants have obtained, would have been granted to Phyfe, but for his reliance on their fulfilment of their agreement. The true consideration, therefore, was the lease itself—the very title which they have obtained. If the lease had been made out in the name of Phyfe, and he had immediately assigned it, there would have been no pretence for the objection ; and such in substance, though not in form, is the character of the transaction.

Were it even true that the contract could not be enforced as such, either in law or in equity, the complainant would still be entitled to relief, on the ground of fraud, to the extent of the actual injury he has sustained. From his reliance on the good faith of the defendants, he has lost the value of the materials of the buildings and other improvements, which, by the terms of the lease, he had a right to remove, but which

he gave up on surrendering the possession to the defendants; and the actual value of the new lease beyond the rent reserved, and also the amount which, from his inability to protect Decker, he will be liable to pay him. The cases are numerous in which equity will relieve a party, deceived by a void promise, who would otherwise sustain an irreparable injury. This is in truth the very principle of the doctrine of part performance, and is applicable to every case where a party relying on a promise, either express or implied, has exposed himself to a loss he would otherwise have escaped, or lost a benefit he would otherwise have obtained. (2 *Sch. & Lef.* 41. 1 *Mad. Ch. Rep.* 32.) Relief has even been granted where the promise was not made to, nor the deception practiced upon the party asking the aid of the court; as, for example, against an heir or residuary devisee, who, by false assurances to a testator or intestate, has prevented an intended legacy or other provision. (*Chamberlain* v. *Agar*, 2 *Ves. & Bea.* 222.)

THE CHANCELLOR. Although, as between landlord and tenant, the complainant had no legal or equitable right to a renewal, as it depended upon the mere volition of his landlord, yet, in regard to third persons, he had an interest which a court of equity recognizes as a valuable and vendible interest. The rule on this subject is, that if a person who has a particular or special interest in a lease, obtains a renewal thereof from the circumstance of his being in possession as tenant, or from having such particular interest, the renewed lease is, in equity, considered as a mere continuance of the original lease, subject to the additional charges upon the renewal, for the purpose of protecting the equitable rights of all parties who had any interest either legal or equitable, in the old lease. This is particularly so in the case of church leases, leases from trustees of charities, or from other persons where there is but a slight probability of the renewal being refused, if the tenant consents to pay the renewal fine, or the increased rent which the landlord may think proper to require. The first case on this subject is *Holt* v. *Holt*, (1 *Cases in Ch.* 190,) where the executor, having given security for the payment of the legacies, took the leasehold estate to himself. He after-

wards obtained a renewal of the lease upon the payment of a fine, and built houses upon the premises, as his own; and Lord Keeper Bridgeman, assisted by Justices Twisden and Wilde, and Barons Raynesford and Wyndham, decreed that the legatees should have the renewed lease as part of the estate of the testator; they paying the fine upon the renewal, and the charges of the improvements. The decision in that case was not founded upon any breach of trust on the part of the executor, for he had every reason to suppose himself entitled beneficially to the leasehold premises. The other property, upon which the legacies were also chargeable, was ample at the time; but a part was destroyed by the fire of London, and the residue being held by a title derived under the commonwealth, was lost by the restoration of Charles 2d. So in the case of *Palmer* v. *Young*, (1 *Vern. Rep.* 276,) which came before Lord Guilford fourteen years afterwards, where a church lease had been granted to three persons, and one of them afterwards obtained a renewal in his own name, it was decreed that he should hold it in trust for the benefit of all. These decisions were followed by Lord King, in *Keech* v. *Sandford*, (*Sel. Ca. in Ch.* 61,) about forty years afterwards; and in *Witter* v. *Witter*, in 1730, (3 *P. Wms.* 99.) In the first case a lease of the profits of the Rumford Market was devised to a trustee for the benefit of an infant. The term being about to expire, the trustee applied to the lessor for a renewal, for the benefit of his cestui que trust. But the trustee refused to renew, on the ground that, from the nature of the property, he could have no remedy by distress; and the infant being incapable of securing the rent by covenant. The trustee thereupon took a lease to himself. And, upon a bill filed by the infant, for an assignment of the new lease, and for an account of the profits, although there was clear proof of the refusal to renew for the benefit of the infant, it was decreed that the lease should be assigned to the infant, that the trustee should be indemnified against the covenants contained in the lease, and should account for the rents and profits subsequent to the renewal. In the last case, the executor, who held a lease in trust for an infant, for a term of years determinable on lives, being unable to obtain a renewal for a term, took a

1835.

Phyfe
v.
Wardell.

new lease in trust, for lives absolutely; which was a descendible interest, and would not, at law, go to the personal representative. And the infant having died under age, but after he was old enough to have disposed of his interest, by will, if the change in the lease had not been made, it was decreed that his interest in the renewed lease, coming in the place of the original lease, should be distributed as personal estate. The cases of *Mason* v. *Day*, (*Prec. in Ch.* 319,) and *Pierson* v. *Shore*, (1 *Atk. Rep.* 480,) although they apparently conflict with the other decisions, do not conflict with them in point of fact. The rule is, not that the renewed lease is to be considered as a *continuation* of the old lease for every purpose, but only so far as concerns the legal and equitable rights of those who had an interest in the old lease. And the two last mentioned cases only decided that the heirs at law who had no interest in the original lease, must take according to the new lease. In the recent report of the case of *Pierson* v. *Shore*, taken from the note book of Lord Hardwicke, (1 *West's Rep.* 711,) the distinction between that case and the case of *Witter* v. *Witter* is fully explained. The Lord Chancellor says: "The true reasons why the guardians of an infant cannot convert his personal property into real, is because the infant would thereby be deprived of the power of disposing of it so soon, and not out of any regard to the real or personal representative." And he expressly recognizes the principle, that, so far as regards those who had an interest in the old lease, the renewed lease is considered a mere continuation thereof, and subject to the same uses. The last case I shall refer to on this subject is *Rawe* v. *Chichester*, (2 *Ambl. Rep.* 715,) before Lord Apsley, in 1773. In that case, the testator having certain leasehold estates for years, in the name of a trustee, bequeathed them to his wife for so many years of the term as she might live, and after her death, if the terms were still in being, then to his brother for life, with remainder to his children. The widow survived the original term; but having obtained a renewal for an additional term, it was decreed that the renewal was for the benefit of the estate of the testator, and that the remainder-men were entitled thereto. In

1835.

Phyfe
v.
Wardell.

that case Lord Apsley says, it may be laid down as a rule, that whoever has a lease, has an interest in its renewal, and it is often the subject of settlements and of the jurisdiction of this court. Though the lessors are not bound to renew, yet when done, it is a continuance of the old lease. If trustees, mortgagees and persons interested, obtain a renewal, the new lease is always subject to the trusts and limitations of the old lease. These cases being all before the revolution, and settling the law on this subject so conclusively, it will be needless to show that the same principle is adhered to in the more recent adjudications in the English court of chancery.

The case under consideration comes directly within the principle established by these decisions. The defendants, therefore, must take their renewed lease as a continuation of the old one, which expired a few days after their contract of purchase; and subject also to the sub-lease to Dickey, the under tenant, of which they were informed at the time of their purchase. And having taken an unconscientious advantage of their legal title, to deprive the lessee of the complainant of the possession to which he was equitably entitled under the lease for a year, they are bound to make good any loss the complainant may sustain thereby. In this view of the case it is not material to consider whether the neglect to insert a particular covenant in the written agreement, as to Dickey's rights, through the fraud of the defendants, would of itself have constituted a sufficient ground for equitable relief. Although the new lease was taken in the names of the defendants, yet, according to the principles above stated, it must be considered, for the purpose of protecting the rights of all parties, as if the renewed lease had been taken in the name of the complainant, and as a continuation of the original lease; which original lease the defendants had contracted to purchase with a full knowledge that a part of the premises were underlet to Decker. This would have given the defendants the right to the possession of the rents and profits of that part of the premises, as the landlords of Decker, upon payment of the purchase money, and to the actual possession of the residue of the premises; which, upon the facts stated, must be considered the fair construction of the written agreement.

The vendor has a right to come into this court to compel the specific performance of a contract of sale against the vendee, although he may have another remedy by action at law for the purchase money; as was recently decided by this court, in the case of *Brown* v. *Haff & Lyon*, not yet reported.[a] In the present case, however, there are other grounds on which the jurisdiction of the court may be sustained. And it is perhaps doubtful whether an action at law could be sustained upon the written agreement, as the original term expired before the time appointed for the performance of the contract. And the principle of considering the renewed lease as a continuance of the old one, being one which is peculiar to the courts of equity, it was necessary, at all events, for the complainant to come into this court to enable him to enforce his equitable lien for the unpaid purchase money, against the legal interests which the defendants have obtained in the premises under the new lease. The decision of the vice chancellor, in overruling the demurrer, was therefore correct, and must be affirmed, with costs.

(a) Ante, p. 235.