## Case No. 8,886.

### McLEAN v. LAFAYETTE BANK et al.

[3 McLean, 415.] [1]

Circuit Court, D. Ohio. July Term, 1844.

BANKRUPTCY — ASSIGNEE — SUIT AGAINST MORT-GAGEES — VALIDITY — PRIORITY — PLEADING IN EQUITY — MULTIFARIOUSNESS—WHAT DEMURRER ADMITS.

1. An assignee in bankruptcy has a right to file his bill in chancery against different mortgagees, to test the validity of their mortgages.

[Cited in Foster v. Ames. Case No. 4,965.]

2. In this proceeding the assignee represents the general creditors of the bankrupts.

3. There is no absolute rule in regard to the multifariousness of a bill. The decisions on this point are unsatisfactory and contradictory. The rule is founded on convenience, and must be applied to the peculiar circumstances of each case.

[Cited in Gamewell Fire-Alarm Tel. Co. v. City of Chillicothe, 7 Fed. 353.]

[Cited in Abbot v. Johnson. 32 N. H. 26; De Wolf v. Sprague Manuf'g Co., 49 Conn. 298.]

[See Giveen v. Smith, Case No. 5,467.]

4. The assignee having a right to discharge incumbrances on the bankrupt's estate, may file his bill against all incumbrancers to ascertain the validity, priority and amount of the incumbrances. Such a proceeding is analogous to the foreclosure of a mortgage.

[Cited in Sutherland v. Lake Superior Ship Canal, Railroad & Iron Co.. Case No. 13,-643; Jones v. Slauson. 33 Fed. 634.]

5. The demurrer admits all the material allegations of the bill.

[This was a bill by Nathaniel C. McLean, assignee in bankruptcy of John Mahard. Jr., and William Mahard, partners as John Mahard & Co , to set aside certain transfers of stock and mortgage of real estate made by the bankrupts and claimed to be fraudulent as to their creditors. An injunction was granted to stay proceedings in the state court seeking to enforce the alleged fraudulent preferences. The case was formerly heard upon motion to dissolve this injunction. Case No. 8,885. It is now heard upon demurrer to an amended bill.]

Wright & M'Lean appeared for complainant.

Mr. Corry. for defendants.

OPINION OF THE COURT. At the last July term this case was before the court, on a motion to dissolve the injunction which had been granted. On that motion the question of jurisdiction was generally considered and sustained. [Case No. 8,885.] Leave was then given to amend the bill, which amendment has been filed, and two of the defendants, J. S. and M. Buckingham, demur to the amended bill, and assign as cause of demurrer, that it is multifarious, in joining distinct rights; and, also, in the misjoinder of parties defendants. The complainant, as assignee of John and William Mahard. bankrupts, filed his bill in chancery, stating that

John Mahard, Jr., one of said bankrupts, being insolvent, and in contemplation of bankruptcy, gave mortgages to the Lafayette Bank of Cincinnati, and other persons, named as defendants, on various tracts of land and town lots, to secure to some of them the payment of large sums of money, and to indemnify others as indorsers for the said Mahards, all of which deeds of mortgage are averred to be in fraud of the bankrupt law. That the partnership assets of the Mahards are small, except the real estate mortgaged as aforesaid, all of which being applied in the payment of debts, will still leave among the creditors of the bankrupts, a large amount unsatisfied. To the Buckinghams, mortgages were given on lots 404 and 460, in the city of Cincinnati, to indemnify and save them harmless on account of their indorsements for the said Mahards. On the same lots, previous mortgages had been executed to Andrew Johnson, to secure him against loss for his indorsements. In addition to these mortgages, a bill of sale was executed to the said Johnson, by the said John Mahard, Jr., for a large amount of personal property, which is also alleged to be void under the bankrupt law [of 1841 (5 Stat. 440)]. The amended bill alleges, that the bankrupts held certain shares of stock in the Lafayette Bank, and in the Franklin Bank, to which the Lafayette Bank and John S. Buckingham, and the trustees of the Franklin Bank, set up some claim. That John Mahard, Jr., sold to Charles B. Dyer, that part of in-lot 404, described in the mortgage to the Franklin Bank, for the sum of ten thousand dollars. That the bank assented to the sale, and having received seven thousand dollars, released its mortgage. And that John Mahard, Jr., received a house and lot in Lewistown, Hamilton county, from Dyer, in discharge of the balance due on the purchase of the above lot. That this arrangement was assented to by the Buckinghams, and was made by the said John Mahard in contemplation of bankruptcy, and in fraud of the bankrupt law. The amended bill further represents. that a mortgage was given by John Mahard. Jr.. on certain real property in Covington, in the state of Kentucky, to the Northern Bank of Kentucky, to secure certain payments to said bank due by the Mahards, which mortgage was in fraud of the bankrupt law. It is also alleged that the mortgages executed to the banks, as aforesaid, were intended to secure loans of money, which were made at a greater rate of interest than six per cent. And the bill prays, that the conveyances aforesaid, for the reasons stated, may be set aside, and declared null and void, and the property mortgaged, sold for the general creditors of Mahard, and for such other and further relief, &c.

The above is a general but not a particular statement of the leading facts of the bill. It is sufficient to show the grounds on which the demurrer to the amended bill has been

[1] [Reported by Hon. John McLean, Circuit Justice.]

filed. The demurrer admits, of course, that the mortgages set forth in the bill were given, as alleged, in fraud of the bankrupt law; and that they are consequently void. It also admits the usury alleged against the banks, and that the proceeding by the Buckinghams, in obtaining their judgment and execution. on which a certain amount of personal property was levied, was also void. And the demurrer rests upon the ground that there is an improper joinder of distinct matters, in which the defendants have no common interest.

Before this point is examined, it is important that we should understand the nature and object of the present bill. The assignee not only represents the bankrupts, but their creditors; and it is his duty to contest the validity of all liens set up by a part of the creditors to the exclusion of others, where there is any reason to suppose that such liens have been created in violation of the bankrupt law. Under the eleventh section of the bankrupt act, he is authorised, by and under the direction of the proper court, in bankruptcy, to redeem and discharge any mortgage or other pledge, or deposite or lien, upon any property, real or personal, of the bankrupt. The bill then may be considered in a double aspect. First, to set aside the liens which are fraudulent; and secondly, under the general prayer of relief, and the special one that the lands, &c., may be sold, and that such liens as shall be found valid, shall be discharged according to their priority. The bill alleges that there is little or no property of the partnership effects; and that the real and personal estate named in the bill, constitute the only property out of which a dividend can be paid to the general creditors. That the debts of the bankrupts far exceed their means of payment. And first, on the supposition that the liens set out in the bill were executeu in fraud of the bankrupt act, can the defendants be joined in a bill to set them aside? It is true, as alleged in support of the demurrer. that interests wholly distinct and separate, it is said by decisions of courts and by elementary writers, cannot be united in the same bill. and the reason assigned is, that individuals ought not to be subjected to the expense and delay of investigating matters in which they have no common interest. That the pleading in chancery should rather conform to the simplicity of pleadings at law. Lord Cottenham, in a late case, well observed, "that to lay down any rule applicable as to multifariousness, or to say what constitutes multifariousness, as an abstract proposition, is, upon the authorities, utterly impossible. The cases upon the subject are extremely various; and the court in deciding them, seems to have considered what was convenient in particular circumstances, rather than to have attempted to lay down any absolute rule." The decisions are contradictory, and each case, as it arises, must be governed by the peculiar circumstances connected with it. The matters of costs and hardship are the principal objections urged to such a proceeding; and the court must always determine from the case itself, whether these objections shall prevail. There is, in fact, no principle involved in this question, beyond the inconvenience and hardship stated. Where the inhabitants of a parish had a right of common under a trust, a suit has been sustained by one in behalf of himself and all the other inhabitants. "In such cases, although there were or might be distinct interests in the different tenants or parishioners, yet there was a general right and privity between them as to the claim asserted in the bill." Story, Eq. Pl. § 121. This is conformable to the decision in the case of Mayor of York v. Pilkington, 1 Atk. 282–284, that, says Lord Eldon, "was a case of a claim to an exclusive fishery against many others who also claimed a right, in which Lord Hardwicke observed, where the plaintiffs stated themselves to have the exclusive right, it signified nothing what particular rights might be set up against them." In Dilly v. Doig, 2 Ves. Jr. 486, it was held that an author cannot file a joint bill against several booksellers, for selling the same spurious edition of the work, for there is no privity between them; and his right against each of them is not joint, but perfectly distinct." Story, Pl. Ch. § 277.

Now, the above cases are irreconcilable In the case of the fishery, there being a joint interest asserted in the bill, "it mattered not what particular rights might be set up against them." And in the case of the author, who asserted a sole interest, the suit could not be maintained, because there was no privity between the defendants, who had violated the copyright. It seems to me there is no sufficient reason in the distinction drawn between these two cases, that the one interest was local and the other general. The trespassers on the fishery may have been as numerous, and probably were more so, than the violators of the copyright. "Upon a bill of peace, persons claiming by distinct titles, not in privity with each other, may be joined." Story, Eq. Pl. § 278. In the case of Brinkerhoff v. Brown, 6 Johns. Ch. 157, Chancellor Kent, after an elaborate view of the cases, said: "The principle to be deduced from those cases is, that a bill against several persons must relate to matters of the same nature. and in which all the defendants are more or less concerned, through their rights in respect to the general subject of the case may be distinct. And when we consider that the plaintiffs in the case now before me, are judgment creditors, having claims against the Genessee Company perfectly established, and not the subject of litigation in this suit; and that the general right claimed by the bill, is a due application of the capital of the company to the payment of their judgments; that the subject of the bill, and of the relief, and

the only matter in litigation is, the fraud charged in the creation, management, and disposition of the capital; and in which charge all the defendants are implicated, though in different degrees and proportions; I think we may safely conclude, that this case falls within the reach of that principle, and that the demurrer cannot be sustained." The same doctrine is sustained in Fellows v. Fellows, 4 Cow. 682, and in Boyd v. Hoyt, 5 Paige, 65. This doctrine may have been carried farther by Chancellor Kent, in the above case, as Mr. Justice Story suggests, in his Equity Pleadings (page 234), than it has been carried in England. But whether such a case may have occurred in the English chancery, is not so much the question, as whether, by the decision, any salutary rule has been violated. The rule as to multifariousness, as before observed, is one founded on convenience, and if, in carrying it out, Chancellor Kent has imposed no peculiar hardship on the Genessee Company, or subjected it to unnecessary expense, the rule is not of less authority than if it had been sanctioned in the English chancery.

There was no privity among the complainants. They were judgment creditors, and they united in filing their bill against the company, alleging a fraudulent application of their capital. The case under consideration, it seems to me, is a stronger one for the exercise of jurisdiction, than the case before Chancellor Kent. The complainant represents the interests of the creditors in this procedure. He alleges fraud in the several liens set up by the defendants. Now, although the frauds charged consist of various and distinct transactions, yet these frauds are of the same character, and for the violation of the same section of the bankrupt act. In every instance where the allegation of fraud is made, as against the respective liens asserted by the defendants, it consists in the bankrupt having created the liens in contemplation of bankruptcy, and to give an illegal preference to certain creditors. Now, these allegations are admitted by the demurrer, and in view of this fact, can the defendants, who have demurred, complain of hardship and oppression in being connected with others, who are charged with having committed similar frauds on the rights of the general creditors. The liens of the Buckinghams cover the same property that is embraced by the liens of several of the other defendants. This is particularly the case as regards the mortgages on the two lots named, the lien of the judgment, and also as to the claim set up to the personal property. Indeed, from the statements in the bill, it would seem that the scramble for the property of the bankrupts was so great by the defendants, and their interests have become so interwoven with each other in endeavoring, according to the averments of the bill, to evade the bankrupt act, that it is difficult to act on the allegations of fraud, without having spread out before the court a connected chain of the facts.

In his Equity Pleadings (section 533), Mr. Justice Story says: "The result of the principles to be extracted from the cases on this subject seems to be, that where there is a common liability and a common interest, a common liability in the defendants and a common interest in the plaintiffs, different claims to property, at least if the subjects are such as may without inconvenience be joined, may be united in one and the same suit." And in section 534, he says: "Indeed, where the interests of the plaintiffs are the same, although the defendants may not have a co-extensive common interest, but their interest may be derived under different instruments, if the general objects of the bill will be promoted by their being united in a single suit, the court will not hesitate to sustain the bill against all of them." Campbell v. Mackay, 1 Mylne & C. 603. There is a common interest among all the general creditors, represented by the assignee, to set aside the liens named in the bill. The complainant's case, then, comes within the rule laid down in Campbell v. Mackay. How is it in regard to the defendants? Their interests arise under distinct instruments, but several of them claim liens on the same property; and, indeed, it may be said that they are all interested in a greater or less degree in the mortgaged estate of the bankrupts. The Buckinghams obtained a judgment by confession against the bankrupts, which, if valid, binds all the real estate of the bankrupts in Hamilton county; they are then interested to postpone all prior liens. And so it may be said of the mortgages under which they claim. It would be impossible for any court to act upon the liens of the Buckinghams, and especially to enforce them, without affecting, to some extent, the interests of other liens on the same property. There is, then, such an interest as makes it proper to include the Buckinghams in the suit, unless it shall subject them to unnecessary costs. And on this ground it is not perceived they have any cause to complain.

When the rule is established that all conveyances made by an individual, in contemplation of bankruptcy, and for the purpose of giving a preference to one or more creditors over the general creditors, it only remains to apply the rule to the different liens of the defendants. And it is not necessary to inquire into the intent of the bankrupt when he made the conveyance, but to show that he was in a state of insolvency, from which the intention is inferred, and the act makes the conveyance void. Now, although the mortgages were executed at different times, yet all subsequent mortgagees are interested in the question, whether the mortgagor was in a state of insolvency when the first mortgage was executed; for if that fact shall be established, it makes fraudulent, equally with the first, all the subsequent

mortgages. In this most material fact then, the defendants, who set up liens to the bankrupt's estate, have a common interest. The bill asserts the fact, and the Buckinghams, by their demurrer, admit it. How then can they insist that they are improperly united in this suit with the other defendants, and that a great hardship will be imposed upon them to enter into a controversy in which they have no interest. The turning point, in all the mortgages, is the one above stated. And in this the defendants have all a common interest. If this be so, the objection that the Buckinghams can have no interest in the allegation of illegal interest, in the amended bill, cannot sustain the demurrer. It is not necessary that the common interest of the defendants should extend to all the matters in the bill. If they have an interest in one or more leading facts in the bill, it is enough to sustain the jurisdiction, though in some other things there shall be no common interest. But the interests of the defendants cannot be said to be wholly disconnected with that which is to be destroyed or lessen any one of the special liens. By this, the general creditors' dividend is increased; and this is especially the case to those who have other mortgages on the same property. In overruling the demurrer on this ground, I cannot see that any hardship or expense is imposed upon the Buckinghams. They are not necessarily subjected to any expense or even delay in investigating a matter in which they have no interest.

The question of jurisdiction on the other aspect of the case, is clear of all difficulty. The assignee has a right to pay the liens on the estate of the bankrupt under the order of the bankrupt court. He has a right to come into this court to set aside all fraudulent liens, and jurisdiction being acquired, the court, as a matter of course, will direct such liens as shall be held valid, to be discharged. On a broader ground the jurisdiction may be assumed. The assignee has a right to ask the aid of a court in chancery to assist him in the duty of discharging incumbrances. First, to ascertain their amount and their priority, and for this purpose, all who claim liens upon the bankrupt's estate, may be united as defendants, and called upon to answer. Under the extensive powers given to the assignee by the bankrupt act, he might, perhaps, sell the equity of redemption in the mortgaged premises in question. But such a procedure, under the circumstances of this case, would be exceedingly improper, as it might sacrifice the interests of the creditors. Here is an estate amounting in value, probably, to forty thousand dollars, and which, with the exception of a very inconsiderable amount, constitutes the entire estate of the bankrupts. There are many creditors of large amounts who have no interest in the liens enumerated in the bill, and who claim a distributive share of the estate. With the view then to ascertain the validity, the priori-

ty, and the extent of the liens, the assignee has an unquestionable right to bring a suit, in chancery, against all the incumbrancers, to test the validity, priority and amount of their claims. And should the liens stated be found legal, or any part of them, this court will ascertain their priority and amount, and direct the money from the sale to be applied by the assignee accordingly. This proceeding is in the nature of one to foreclose a mortgage. In such a case, all incumbrances, whether prior to or subsequent to the mortgage on which the procedure is had, are proper parties. This enables the court to ascertain the priority and extent of the liens, and on a sale of the mortgaged premises, properly to apply the proceeds. In such a proceeding, the object is not to ascertain pretended, but real incumbrances. The last mortgagee has a right to pay off all prior mortgages, and secure to himself the liens under them. But this is authorised only by a person who has a valid incumbrance; consequently, the court, in ascertaining all the incumbrances, must necessarily ascertain their validity.

The proceeding under consideration arises, necessarily, from the provisions of the bankrupt act. Effect could not be given to those provisions, in a case like the present, except through the interposition of a court of chancery. It is only in such a court that the priority of the liens can be ascertained. To determine this, the instruments must be before the court, so that they may be compared. The objection of usury, as averred in the amended bill, and which is the principal ground of demurrer to this procedure, can have no weight. The court must inquire into the validity and the amount of the liens, to enable the assignee to discharge them; and, indeed, such discharge must be made under the decree of the court. The interest of the general creditors, and, also, the interest of the mortgagees, are all adjusted and finally settled by the decree. For this purpose, then, the jurisdiction of the court may not only be exercised, but it is not perceived how such a case can be properly settled in any other mode. A sale on any mortgage does not affect the rights of other mortgagees, unless they are made parties. A mortgagee, whose mortgage is prior to that on which the sale is made, cannot be affected, as his right is paramount to the junior mortgage. Nor is the interest of a subsequent mortgagee affected; for, notwithstanding the sale, he may, not having been made a party, pay the purchase money and interest, and claim that the property shall be again sold in satisfaction of his mortgage, and of the sum paid by him to the first purchaser. The rights, therefore, of these mortgagees can only be settled by bringing them before the court, as has been done in this case. And the allegation in the amended bill, as to the rate of interest charged by the banks, whether, if sustained, the effect shall be to avoid the instruments or the

interest only, it was proper to make it a charge in the bill. In the decision of this point, the general creditors are not only interested, but also all the other mortgagees. For if the bank mortgages shall be set aside or reduced in amount, their mortgages, if valid, being for, in part, the same property, will secure the payment of a larger amount. Whether the court can direct the sale of the land mortgaged in Kentucky, need not now be considered. The mortgagee is a party to the suit, and if, on no other ground, it would be proper to have that mortgage before the court, to see how it stands connected with other mortgages and liens, which the same mortgagee holds on other property in this state.

Upon the whole, I can entertain no doubt, that under this last head, the jurisdiction is sustainable. The force of the objection as to misjoinder of parties is not perceived. The defendants in Kentucky have voluntarily answered, and that makes them parties to the suit. And if the interests of the defendants are properly brought before the court, as has been shown, there can be no objection to the joinder of those who claim such interests. The demurrer is overruled.

[NOTE. The case was again heard upon motion of complainant to appoint a receiver to take charge of a farm, part of the real estate alleged to have been fraudulently conveyed. The motion was allowed. Case No. 8.887. It was then heard upon the question of the validity of the transfers alleged to be fraudulently made by the bankrupts. Some of these were held to be invalid. Id. 8,888. Finally it was heard on exceptions to the master's report. Id. 8,889.]