## Case No. 5,176.

GAINES v. MAUSSEAUX et al. GAINES v. CRONAN et al. GAINES v. COMPTON et al.

[1 Woods, 118.] [1]

Circuit Court. E. D. Louisiana. April Term, 1871.

E. T. Merrick and J. Q. A. Fellows, for complainant.

Miles Taylor and James McConnell, for defendants.

BRADLEY, Circuit Justice. These cases come up on demurrers and pleas. The bills are similar in character, and a description of one is a description of all. They are all substantially in the same form, as were the bills in the cases of Gaines v. Hennen, 24 How. [65 U. S.] 553, and Gaines v. New Orleans, 6 Wall. [73 U. S.] 642.

The complainant in each of these bills alleges that she is the legitimate daughter of Daniel Clark, deceased, who died in August, 1813; and that said Clark, by his will dated July 13, 1813, declared the complainant to be his legitimate and only daughter, and made her his universal legatee; that he died seized and possessed of several tracts of land and real estate in the city of New Orleans and its vicinity, a description of which is given: that in the year 1811, he had made another will (which was revoked by the will of 1813), by which former will he made his mother, Mary Clark, his universal legatee, and one Relf and one Chew executors; that the defendants claim the lands possessed by them, which are parcel of the lands described as belonging to Daniel Clark, under and by virtue of sales made by Relf and Chew as such executors; whereas the bill charges that such sales were void; that the requisite

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

formalities were not observed to authorize executors to sell; that no orders to sell were made by the proper judges; that the proceedings were in divers other respects, specified in the bill, defective and illegal; and that the defendants were chargeable with notice of these illegalities when they became purchasers of the property held by them respectively. The bill sets out the probate of the will of 1813, and various collateral matters relating to the history thereof, and of the complainant, and prays for a discovery of the particular deeds and chain of title under which the defendants severally claim; and a discovery and account of the rents and profits received by them respectively; and a decree that the property be delivered to the complainant. The bill is objected to:

1. Because it seeks discovery of the defendant's title. It is undoubtedly, a general rule that the complainant cannot compel the defendant to discover the evidence of his (the defendant's) title when it does not also constitute evidence of the complainant's title. But if it does furnish evidence of the complainant's title, then it is not privileged from discovery. It is laid down distinctly that a complainant "is entitled to a discovery of everything which may enable him to defeat the title which it is expected will be set up against him." Pol. Prod. Doc. p. 22, vol. 77, Law Library. "If the defendant," says the lord chancellor, in one case, "pleads that a certain deed forms a part of his title, and withholds the deed, he cannot be compelled to produce it, because it is the defendant's title, and not the plaintiff's; but if the plaintiff alleges that the deed contains something which would show that the plaintiff is entitled, to support the plaintiff's title, the defendant is bound to answer that question. He may not be bound to produce the deed, if he negatives that ground on which the plaintiff claims the inspection of it; but then, although it is the defendant's title, it is part of the plaintiff's evidence, and may be the most important part of the plaintiff's evidence, who may find in a deed constituting the defendant's title a recognition of that which, if true, would supersede the title set up by this subsequent instrument." Attorney General v. Corporation of London, 12 Beav. 8.

This is precisely the case here. The complainant alleges that defendants hold under the void sale of Relf and Chew. If this be true, the complainant's case is established. For as both titles are derived from Daniel Clark; one through the will of 1811, and the other through the will of 1813; the latter title must be the best. It is important to the complainant, therefore, to show that the defendants do claim title under the will of 1811. This is a part of her evidence of title as against the defendants. Of this evidence she is entitled to a discovery. If the defendants do not, either immediately or remotely, derive title from Relf and Chew un-

der the will of 1811, they can so state in their answer, and thus excuse themselves from showing how they do derive their title. But they must be careful not to deny what they are legally bound to know. The fact that, in this state, titles are registered in a public office, does not alter the case. The defendants may, possibly, rely on other titles than those which are registered. And, moreover, the complainant is not bound to search the records for the purpose for which she desires this discovery. '

2. The next ground taken is,. that the bill is multifarious, because it joins defendants holding distinct tracts of land under distinct conveyances. This very question was fully discussed in the first case which the complainant brought in .this court for the recovery of her rights,—the case of Gaines v. Relf, commenced in July, 1836, and reported in 2 How. [43 U. S.] 619. The various tracts of which Daniel Clark died seized were described by the bill in that case, as in this; and recovery was sought against a large number of persons in possession thereof, as is sought here; and on demurrer in this court, the judges were divided in opinion. The case being certified to the supreme court, it was held that the bill was not objectionable for multifariousness in the respect referred to. The court say: "The main ground of defense, the validity of the bill of 1811, and the proceedings under it, is common to all the defendants. Their interests may be of greater or less extent, but that constitutes a difference in degree only, and not in principle. There can be no doubt that a bill might have been filed against each of the defendants, but the question is, whether they may not all be included in the same bill. The facts of the purchase, including notice, may be peculiar to each defendant; but these may be ascertained without inconvenience or expense to codefendants. In every fact which goes to impair or establish the authority of the executors, all the defendants are alike interested. In its present form the bill avoids multiplicity of suits, without subjecting the defendants to inconvenience or unreasonable expense." 2 How. [43 U. S.] 643, 644. Two distinct matters were introduced into that case, in which the majority of the defendants were not interested; namely, the claims of Catharine Barnes and her husband, and the account prayed against the executors, Relf and Chew. The court permitted the bill to be amended by the omission of these matters, and, with that amendment, held it to be unobjectionable. That case is precisely in point, and must be considered as governing this.

3. The next objection is, that the complainant has a sufficient remedy at law. This point, if well founded, could not have escaped the attention of the eminent counsel who argued the cases of Gaines v. Hennen and Gaines v. New Orleans [supra], before the supreme court. Some of the very cases now before me were before that court then. And the very same point was taken in the answers of the defendants in the latter case, and must have been passed upon by the court, although not formally discussed in the opinion.

The precise question was also raised in the before mentioned case of Gaines v. Relf, 2 How. [43 U. S.] 619. And although the executors of the will of 1811 were parties to that suit, and were charged with fraudulently setting up that will, yet jurisdiction was sustained, as well in view of the peculiar nature of the case, independent of that part of it. The point is discussed by the court on pages 647–650, and on page 649 the following observations occur: "But the controversy is rendered complicated by the numerous parties and the various circumstances under which the purchases were made. Besides, many facts essential to the complainant's rights are within the knowledge of the defendants and may be proved only by their answers. Of this character is the fraud charged against the executors in proving the will and acting under it, and the notice of such fraud before their purchase, alleged against the other defendants. If fraud shall be established against the executors, and a notice of the fraud by the other defendants, they must be considered, though the sales have the forms of law, as holding the property in trust for the complainants. Under these circumstances a suit at law could not give adequate relief. A surrender of papers and a relinquishment of title may become necessary. The powers of a court of chancery in this view are required to do complete justice between the parties."

In view of these considerations, the supreme court, in that case, returned for answer, the circuit court had jurisdiction of the case, and that it did not belong exclusively to a court of law. Add to this the discovery sought in relation to the claim of title by the defendants under the will of 1811, and in relation to the rents and profits received by them, and it will appear that the elements of equitable jurisdiction are sufficiently involved in the case.

4. Several matters are set up by way of plea. A glance at these pleas shows, however, that they not only contain matter not proper for a plea, but that they are bad for duplicity.

It is a general rule, that a plea must contain but one matter or point, and that only one plea can be filed to the whole bill, or to any specific part thereof. Story, Eq. Pl. §§ 652–657. The pleas in these cases really amount to answers. The matters set up therein can as well be set up in answers as in pleas, and several of the points made are such as have already been disposed of on demurrer. Most of them are a jumble of different defenses. Take for example the pleas of Mrs. Matthews, in case [docket] No. 5,058:

"For her several and separate pleas," to use her own language, "she doth say" (I give the substance of the pleas that follow): (1) That the complainant has a complete remedy at law. (2) Prescription for thirty years. (3) That the defendant has made expensive and useful improvements for which she is entitled to compensation by the laws of Louisiana. (4) That a suit in chancery deprives her of a trial by jury to which she is entitled by the seventh amendment of the constitution. (5) That a suit is now pending in the state probate court (Second district court of New Orleans), in which the validity of the will of 1813 is called in question.

In this paper we have presented to us, mixed up together, matters proper for a demurrer, for a plea in bar, for a plea in abatement, and for an answer, and severally unsuitable for any other form of pleading. Such irregular modes of pleading cannot be tolerated. And when it is remembered, that every defense, whether in law or in fact, can be set up in an answer, I have no hesitation in overruling the demurrers and pleas in these cases.

An order will be made to overrule the several demurrers and pleas with costs, and requiring the defendants to answer the complainant's bill in each case, on or before the rule day in December next.