JONES v. SLAUSON et al.

(*Circuit Court, E. D. New York.* January 4, 1888.)

1. EQUITY—PLEADING—MULTIFARIOUSNESS.
   A bill filed by an assignee in bankruptcy against several defendants to set aside various separate conveyances of property, alleged to have been made in fraud of creditors, is not demurrable for multifariousness.

2. FRAUDULENT CONVEYANCES—TRANSFER OF LEASE—INSOLVENCY—RENEWAL OF LEASE.
   The transfer of a lease in fraud of creditors by an insolvent before going into bankruptcy, is the creation of a trust in favor of the creditors, and may be reached by the assignee in bankruptcy in the hands of any subsequent transferees with knowledge of the facts, though they be holding under a new lease, executed after the expiration of the bankrupt's term.

3. LIMITATION OF ACTIONS—FRAUD—PRESUMPTION.
   On demurrer, setting up the statute of limitations, the court will not infer from the fact that the alleged fraud occurred more than two years prior to the commencement of the suit that the complainant discovered the facts constituting the fraud before such period.[1]

4. EQUITY—LACHES.
   A demurrer to a bill on the ground of laches will not be sustained, unless the bill upon its face, without reverting to inferences, makes a clear case of unreasonable delay by complainant after his discovery of the fraud.[2]

In Equity. On demurrer to bill to set aside conveyance.

Action by Jones, assignee, against Slauson and others, defendants, to set aside several conveyances of real estate alleged to have been made in fraud of creditors.

*Benjamin G. Hitchings*, for complainant.
*James R. Angel*, for defendants.

LACOMBE, J. In August, 1878, the defendant David M. Smith was declared a bankrupt, and the plaintiff was afterwards appointed his as-

---

[1] As to when the statute commences to run against an action for fraud, see Board Sup'rs Mecosta Co. v. Vincent, (Mich.) 33 N. W. Rep. 44, and note; National Bank v. Perry, (Mass.) 11 N. E. Rep. 81, and note; Simmons v. Baynard, 30 Fed. Rep. 532; Murphy v. Reedy, (Miss.) 2 South. Rep. 167; Piper v. Hoard, (N. Y.) 13 N. E. Rep. 632.
[2] As to what is such lapse of time as will preclude equitable relief, and what are circumstances sufficient to rebut the imputation of laches, see Hoffert v. Miller, (Ky.) 6 S. W. Rep. 447, and note.

signee. This action was brought by such assignee to set aside the conveyance of three separate parcels of the bankrupt's property to the several defendants, with allegations as to each that it was made when Smith was insolvent, and was made and accepted for the purpose of putting his property beyond the reach of his creditors. These pieces of property comprise (1) certain real estate in Brooklyn, claimed in fee by the defendant Willets; (2) a house and lot in Centre street, New York, claimed in fee by the defendant Richard S. Jones; and (3) a leasehold of property at No. 70, New Church street, New York, now held and claimed by the defendants Slauson & Co. The original lease of the last-mentioned parcel was acquired by Smith July 3, 1869. It was from the rector, etc., of the Protestant Episcopal Church of Jamaica, running for 21 years from May 1, 1864, and contained no covenant of renewal. Smith erected a building on the property, and has ever since occupied it as his place of business. On or about December 22, 1874, he assigned and transferred the lease to Albert Slauson; as the complaint alleges, without consideration and in fraud of his creditors. Subsequently, Albert Slauson, with the consent and connivance of Smith, procured from the church corporation a lease of the same premises, upon the same terms and conditions, to himself as lessee, from May 1, 1878, to April 27, 1885. After the expiration of this lease, and on or about May 10, 1885, a new lease of said premises was taken from the said church corporation by the firm of A. Slauson & Co., consisting of defendants Albert Slauson, Austin H. Slauson, and Robert H. Moses, for the term of 21 years from May 1, 1885. This was done, as complainant avers, with full knowledge on the part of the firm, and in fraud of the creditors of Smith. Upon these facts complainant prays for a decree adjudging all Smith's conveyances aforesaid to be in fraud of creditors; that, as to the property in New Church street, the lease taken in the name of A. Slauson & Co. may be adjudged a renewal of and impressed with the same and all rights and equities in favor of the creditors of Smith as the original lease assigned by Smith to Albert Slauson; and that defendants A. Slauson & Co. be decreed to assign over the same to the receiver appointed or to be appointed in the suit. The defendants A. Slauson & Co. demur to the bill (1) as multifarious; (2) that it sets forth no cause of action against them, touching the new lease of May 10, 1885; (3) that the property other than the new lease is vested in a receiver appointed by a state court; (4) that the suit is barred by the statute of limitations, Rev. St. U. S. 5057; and (5) because of complainant's delay and gross laches in bringing the suit.

1. As to multifariousness. The defendant's contention is that the several conveyances of the different pieces of the bankrupt's property are separate transactions; that each defendant may fairly say that, by their union in the same complaint, he is brought as defendant upon a record with a large portion of which, and of the case made by which, he has no connection whatever; that thus he may be put to unnecessary expense, and his own case be prejudiced, by being viewed through a possible atmosphere of fraud created by other transactions of the bankrupt with

which he had no connection. Whatever force there may be in this argument on principle, it is not borne out by the authorities. The propositions that a bill may be filed against several persons relative to matters of the same nature, forming a connected series of acts, all intended to defraud and injure the plaintiffs, and in which all the defendants were more or less concerned, though not jointly, in each act, and that unconnected parties may be joined in a suit where there is one issue in the case,—have been affirmed and reaffirmed in the courts of this state, and that, too, in suits brought, as this is, to reach property of a debtor conveyed in fraud of his creditors in divers ways, at different times, and to separate parties. *Brinkerhoff* v. *Brown*, 6 Johns. Ch. 139; *Fellows* v. *Fellows*, 4 Cow. 682; *Boyd* v. *Hoyt*, 5 Paige, 65. The same opinion is forcibly expressed in *McLean* v. *Bank*, 3 McLean, 415. In that case an assignee in bankruptcy had filed a bill similar to the one in this case, which was demurred to as multifarious. Passing upon this objection, Judge McLEAN says:

"The complainant represents the interests of the creditors in this procedure. He alleges fraud in the several liens set up by the defendants. Now, although the frauds charged consist of various and distinct transactions, yet these frauds are of the same character, and for the violation of the same section of the bankrupt act. In every instance where the allegation of fraud is made, as against the respective liens asserted by the defendants, it consists in the bankrupt having created the liens in contemplation of bankruptcy, and to give an illegal preference to certain creditors. Now, these allegations are admitted by the demurrer, and, in view of this fact, can the defendants, who have demurred, complain of hardship and oppression in being connected with others, who are charged with having committed similar frauds on the rights of the general creditors."

This is generally accepted as the practice in the federal courts. *Bunnell* v. *Stoddard*, 2 Amer. Law Rec. 145; *Gaines* v. *Mausseaux*, 1 Woods, 118; *Sheldon* v. *Packet Co.*, 8 Fed. Rep. 769; *Johnson* v. *Powers*, 13 Fed. Rep. 315; *Potts* v. *Hahn*, 32 Fed. Rep. 660.

2. As to the new lease. The demurrer concedes the allegations of fact contained in the complaint. It therefore concedes that when Smith transferred the old lease to Albert Slauson, he did so without consideration, and in pursuance of a concerted scheme, to which both were parties, and by which Smith's creditors were to be defrauded. This being so, Slauson held the property impressed with a trust in favor of these creditors, and might be required to transfer it to complainant, their representative. What was this property? Besides the unexpired term, there belonged to the tenant—independent of any covenant to renew—an expectancy of renewal, good-will, or tenant-right, which is recognized as property for the purpose of protecting parties having legal or equitable interests in such renewal. *Moody* v. *Matthews*, 7 Ves. 175; *Featherstonhaugh* v. *Fenwick*, 17 Ves. 298a; *Phyfe* v. *Wardell*, 5 Paige, 268; *Bennett* v. *Vansyckel*, 4 Duer, 462; *Gibbes* v. *Jenkins*, 3 Sandf. Ch. 134. "The good-will of a lease, which the landlord is in the habit of renewing, is property, and rights growing out of it, whether by contract or otherwise, will be protected and enforced by a court of equity." *Davis* v. *Gray*,

16 Wall. 228. Had Albert Slauson remained in possession until the expiration of the old lease, and then taken a new lease in his own name, he would hold the new lease as a renewal of the old one,—as the fruit of the good-will or expectancy of renewal which he obtained from the bankrupt,—and subject precisely as was the old lease, to the claim of Smith's creditors. *Plyfe* v. *Wardell*, 5 Paige, 268; *Gibbes* v. *Jenkins*, 3 Sandf. Ch. 134; *Mitchell* v. *Read*, 84 N. Y. 562. The substitution of a lease to himself, covering the unexpired term of the Smith lease, certainly did not relieve Albert Slauson from the operation of these well settled rules of equity, nor is there any good reason, on principle or authority, for claiming that the fact that his firm took the lease in its own name—all the partners being fully informed as to the facts, (as by demurring they concede)—should alter the situation. The new lease was given to a party whose relationship to its subject-matter arose under and by virtue of the old lease, and will, therefore, be presumed to have been given because of that relationship. The defendant Smith, meanwhile, has obtained his discharge, and it was urged, on the argument, that it was "absurd to claim that the lease to Slauson and others is void because it was made for the benefit of Smith, when it is clear and not disputed that Smith himself might have taken the lease, and that his former creditors could not interfere with it." This statement is hardly correct. The lease to Slauson & Co. is not "void because it was made for the benefit of Smith." It is not void at all, but, being the mere outgrowth of the expectancy of renewal, which belonged to Smith's creditors, and not to Slauson, it also belongs to them and not to him. Nor is defendant's assumption either clear or undisputed. After-acquired property of Smith is, of course, free from the claims of his old creditors, but the theory upon which the decisions above cited were rendered is that the new lease is not after-acquired property, but a mere transformation and expansion of a property right created under the old lease. If the principle of those decisions is carried to its legitimate conclusion, Smith himself could not take the new lease, because, his relationship to the subject-matter having arisen under the old lease, it will be presumed that the new lease was given to him because of that relationship. In other words, the expectancy of renewal under the old lease was held by Smith and his transferees, be they many or few, near or remote, impressed with a trust in favor of his old creditors, and that trust attaches to the fruits of that expectancy in whosoever hands they be, provided they passed to those hands with knowledge of the facts. Could Smith, the day after his discharge, have taken his old lease back from Albert Slauson and held it free from the trusts with which it was charged in favor of his old creditors? Clearly not. How, then, can it be claimed that he might thus receive and profit by a new lease which the decisions expressly hold to be a mere renewal of the old one?

3. As to the statute of limitations. The bill avers that complainant first learned of the fraudulent conveyances which he seeks to avoid within a month before the commencement of the suit. Even if this averment were absent, this demurrer could not be sustained. "The

court will not, in support of a demurrer setting up the statute of limitations, infer from the fact that the alleged fraud occurred more than (two years) prior to the commencement of the suit that the complainants discovered the facts constituting the frauds before the period of (two) years." *Sheldon* v. *Packet Co.*, 8 Fed. Rep. 769, 777; *Johnson* v. *Powers*, 13 Fed. Rep. 315.

4. Neither will a demurrer, insisting upon a lapse of time short of the statutory period, be sustained, unless the bill upon its face, without reverting to inferences, makes a clear case of unreasonable delay, upon the part of the complainant, after the discovery of the fraud charged. *Sheldon* v. *Packet Co.*, 8 Fed. Rep. 777. No such case is shown by the bill, and the demurrer on the ground of laches must be overruled.

5. There does not seem to be in the bill any averment supporting the contention that the property is vested in a receiver appointed by a state court.

The demurrer is therefore overruled.