## Boyd & Suydam *vs.* Hoyt & Parsel.

In a creditor's bill to reach the property of a judgment debtor, which has been transferred fraudulently or without consideration, two or more persons holding different portions of such property by distinct conveyances may be joined as defendants.

Where the object of a suit is single, different persons having or claiming separate interests in distinct or independent questions, all connected with and arising out of the single object of the suit, may be joined as defendants, so that the whole object of the bill may be obtained in one suit.

A claim against two or more persons, to whom the property of a judgment debtor has been improperly transferred, cannot be joined in the same bill with a claim against one of the defendants, for compensation for waste committed on the real estate of the judgment debtor, after it had been purchased by the complainant on execution, but before the time for redemption had expired.

Where waste is committed upon real estate purchased under execution, between the sale and the expiration of the time allowed for redemption, the purchaser, if the premises are not redeemed, is entitled to the proceeds of the waste, in the hands of the judgment debtor, or of any other person who may have received the same without consideration, or with full knowledge of the equitable rights of such purchaser.

If a joint claim against two defendants is improperly joined in the same bill, with a separate claim against one of the defendants, both or either of the defendants may demur to the bill for multifariousness.

A demurrer to a bill for multifariousness, like a demurrer for a misjoinder at law, goes to the whole bill; and if the demurrer is allowed, the bill will be dismissed as to the party who demurs.

THE bill in this cause was filed by the complainants as judgment creditors of E. Hoyt, after the return of an execution unsatisfied, in part, to reach certain property in the hands of the defendants, his son and son-in-law, which, as was alleged in the bill, had been placed in their hands in fraud of the complainants' rights as creditors; and which they sought to have applied in satisfaction of the balance due on their judgment. It appeared that the defendants had no joint interest in the property sought to be reached by this part of the bill; but that such property had been received by them in divers ways and at different times. Another object of the bill was to reach the proceeds of certain waste, com-

March 2.

mitted by the defendant W. Hoyt, or by E. Hoyt, his father, upon certain lands which had been purchased in by the complainants on their execution, between the time of the sale and the expiration of the time allowed by law for redemption, when the complainants became entitled to a conveyance from the sheriff. .E. Hoyt had removed from the state, and died intestate and without property, previous to the commencement of this suit. The defendants, severally, demurred to the complainants' bill for multifariousness, which demurrers were overruled by the vice chancellor before whom the suit was pending. And from the decretal order, overruling the demurrers, the defendants appealed to the chancellor.

The following is the opinion of the Vice Chancellor :

D. Mosely, V. C.    This is a creditor's bill, filed to reach the things in action and equitable interests of the debtor, to satisfy the balance due on their execution.

The bill sets forth the recovery of a judgment against Eliphalet Hoyt, the issuing of an execution and sale of his farm, and leaving a balance of upwards of $300 still due, with the usual averments ; and alleges that the debtor and one of the defendants removed from the premises some buildings and timber, before the plaintiffs received their deed, sold the same, took notes therefor, and that the notes were transferred to the defendants, some or one of them ; that the debtor assigned other property to two daughters, one of whom intermarried with the defendant Parsel, who has received into his possession that portion of the property assigned to his wife, and has possessed himself also of so much as was received by the other daughter, she being dead, and no administration taken on her estate.    The bill further alleges the death of Eliphalet Hoyt, the debtor, and that no letters had been taken out on his estate, and charges the defendants as his fraudulent assignees ; and prays for a decree that, as to the proceeds of the sale of the buildings and timber, the one defendant may account directly to the complainants for the whole value thereof, irrespective of the amounts due ; and that both defendants

may account for the amount of the debtor's estate, of which they have become possessed.

There is a demurrer to the bill for multifariousness, and which involves, I think, one of the nicest technical rules in chancery pleading. The rule itself seems to be one well recognized and of salutary influence, but it is not to be denied that it is attended with much difficulty in its application; and if I have been able correctly to distinguish the cases that have been under examination, it has appeared that many things put into a bill have been considered as rendering a bill multifarious in the English chancery, which are not so treated in our courts.

After endeavoring to trace the principle through many English cases, with much uncertainty and complexity, I come to the case of *Fellows* v. *Fellows*, (4 *Cowen*, 682,) in which the several judges in that court admitted the general rule that a bill containing things distinct in their natures against several defendants is bad. Justice Woodworth says, as the English judges said, *that unconnected parties may be joined in a suit where there is one connected interest among them all, centreing in the point in issue in the cause.* This case, of *Fellows* v. *Fellows*, is one more strongly analogous to the one under consideration than any one which precedes it; and the difficulty is not so great in discovering the true rule, as in applying it to the facts in a given case. In so far as the complainants in this case are concerned, the cause of action is evidently single; *it is the* judgment, the balance of which they seek to have paid out of the judgment debtor's property, in whose hands soever the same may be. If the proceeding was by execution, it would go at once against every man having possession of any of the debtor's property liable to execution. And this proceeding by bill is but another mode of extending an execution upon property not heretofore liable to it. As it respects the defendants, (and which is the direction the demurrer takes,) they are severally charged with a fraudulent interference and combination with this judgment debtor, to abstract his property so as to prevent the satisfaction of the complainants' debt; and a demurrer will not lie (says Judge Woodworth) though the several defendants in a bill are unconnected with each

other, if they have a common interest centering in one point in a cause. Now it is not difficult to perceive that there is a question in this cause in which the defendants may be said to have a common interest, to wit : whether Eliphalet Hoyt, the debtor, transferred to these defendants his estate, to defraud the complainants. If the facts alleged be true, and they are admitted, each defendant, though unconnected with the other, did interfere and receive portions of this common fund, to the injury of the plaintiffs ; and we may say, in the language of Judge Sutherland, in the above case, here the general right, claimed by the bill, is a due application of the debtor's property to the payment of plaintiff's debt ; here the general scope of the bill, and the only matter in litigation, is the fraud charged in the disposition of the estate, and in which charge all the defendants were implicated, though in different degrees and proportions. It is one matter—the property of Eliphalet Hoyt ; and the point in issue is, upon which the right of all the parties must depend, whether the transfer of the property to his son and son-in-law was fraudulent or not."

The only shades of difference in matter of fact between the above case and the one now before me is, that in the latter the debtor was dead before the bill was filed, and the time or times in which he transferred the portions of property, or in which they got possession of it, were a little farther asunder. As to the first point of difference, I apprehend that the death of the debtor, transferring his property fraudulently, does not purge the offence in the assignee ; and as to the second cause of difference, it seems not to exist in principle. It would introduce a rule too fluctuating and arbitrary, to allow a difference in point of time in receiving distinct portions of a debtor's property, to characterize the transactions as independent and unconnected.

Again ; in the language of Ch. J. Savage, in the above case, there was certain property in the hands of Eliphalet Hoyt, which, though not liable to be reached by execution, yet the law had set it apart to satisfy the demand of the first judgment and execution creditor who should file his bill to reach it. This fact was known to all the defendants, and

each of them separately, as we are to intend, conspired with the said Eliphalet Hoyt to defraud the complainants, by each taking separate portions of his property. There was no privity between Walter Hoyt and Parsel, but there was a privity between Walter and Eliphalet Hoyt, and between Parsel (in a representative right) and E. Hoyt. The common point of litigation is the fraudulent transfer of the property; if the source of their title be corrupt, the property was taken with the taint of corruption. The same doctrine is maintained through the whole case of *Fellows* v. *Fellows* as it was advanced by Ch. Sanford; and his decree overruling the demurrer was affirmed unanimously. At one period the property sought to be reached now, was the common property of Eliphalet Hoyt—the avails of the buildings, timber, notes and furniture. At that period the complainants had a right to call it out of his hands. But if there was at that time a common fund, then the division of it fraudulently is the point in issue, in which all the branches of it concentrate. It is believed that if Eliphalet Hoyt was alive, and we admitted the principle involved in the demurrer, he would be a necessary party to each suit brought against the several persons, who should have received from the common source of fraud several portions of his property. This would involve him in a multiplicity of suits. Again, if the matters were necessarily several and distinct, then it must follow that a debtor owing $500, and having property in notes, bonds and mortgages, or goods, amounting to $1000, might dispose of them to ten men, and the creditor be remediless. But it seems to me that it necessarily follows, from the peculiar nature of this remedy, that every person, in any degree participating in the fraudulent transfer of the debtor's property, should be united in the suit. The usual averments in a bill are such, that if the debtor has lands held by one man in trust, choses in action by another, and goods by a third, the complainant prays for a discovery of the names of such trustees, in order that they may be made parties to the bill when discovered. Parties to what bill? Not to a new several bill, but to this bill in which the prayer is. And, as saith Senator Colden, if the property be in the hands of several as trustees, though they hold different parcels of it, the

1835.

Boyd
v.
Hoyt.

suit is not for distinct matters any more than it would be if it was against Eliphalet Hoyt for *money*, *notes* and *lands*. There are indeed some features of the bill under consideration variant from the one in *Fellows* v. *Fellows*—that in particular which sets up as a cause of action the tortious removal of the buildings from the farm, and the claim to a decree for the whole of the damages arising therefrom, irrespective of the amount due on the judgment. So far as the taking of the buildings is in question, the bill perhaps might be read as though this was but a mode of setting out the consideration of the notes, and which notes, or the avails of the sales of the buildings and timber, are claimed to be applied towards satisfaction of the judgment. But if the prayer for relief, by having the whole of this paid directly to the complainants, is considered as giving to the demand the character of one remediable at law, then we apply the demurrer to it ore tenus ; if we do this, the consequence only will be that the defendants must pay the costs of the demurrer, and the plaintiffs may amend, by striking out the whole of that matter, or by re-stating and correcting the prayer for relief, as they shall be advised. Perhaps a more correct resolution of the subject would be to say, that as the demurrer ore tenus is only to a portion of the bill, it must take the fate of a demurrer on record, and be overruled, if another part of the bill requires an answer. This question I consider as well settled in our courts—that when to any part of the bill, either as to the relief or discovery, the plaintiff is entitled to an answer, a demurrer to the whole will be overruled. Chancellor Kent reiterates the language of Ch. B. Comyns, that it would be unreasonable to refuse the aid a party is entitled to, in conscience, because he asked some thing more. (*4 John. Ch. R.* 276.) Now, unless more force is given to a demurrer ore tenus than if included in the pleading, all that it says is "as to the cause of action growing out of the removal of the trees, &c. you have a perfect remedy at law ; and as it respects one item of the claim, you should not have made another person a party." If these causes of demurrer were specially assigned, as to this portion of the bill, the demurrer would have left the

1835.

Boyd
v.
Hoyt.

residue unanswered. It is true that in 6 *John. Ch. Rep.* 159, it is laid down that other causes may be assigned at the hearing, and such as may be *unanswerable.* The consequence of allowing a demurrer ore tenus is the payment of cost by the defendant of the demurrer on record, and permission to the plaintiff to amend. (3 *Paige*, 283.) How it is consistent for such a practice to prevail under the preceding rule is difficult to perceive, unless we say the objection was not urged. It does not appear to be noticed by the chancellor.

The result is, that the demurrer for multifariousness is not sustained, and that the demurrer ore tenus is overruled, because part of the bill should have been answered. And as was said in *Fellows* v. *Fellows,* a similar case, if the complainant is not entitled to relief precisely in manner and form as prayed, the defendant can by answer show wherein ; or he may deny the complainant's right to relief in such form, and the equity of the case will mould the decree. And, as Chancellor Walworth says, (1 *Paige*, 286,) the defendants may at the hearing insist that the complainants shall be confined to such relief as they are entitled to under the circumstances. Again ; Justice Sutherland says, that the " forms of proceeding, and the power of the court to mould the decree so as to suit the various equities of the case, as established by the proof, enable it advantageously to settle, in one suit, rights and interests, which, according to the rules of pleading in courts of law, would necessarily result in various issues incapable of being tried in a single cause and disposed of in a single judgment."

If we for a moment look out of the books and view the parties as they stand in relation to each other, it would seem that every principle of justice in respect to them requires that the whole of this family of children, who have been partakers in any portion of this property which Eliphalet Hoyt, the debtor, thus unjustly disposed of, instead of paying this debt, ought to be called in to bear such a portion of the burden as their respective shares of the fund will enable them to do. The whole subject is then settled in one suit ; and while justice is done to the

plaintiffs, it may also be administered between the defendants themselves.

The demurrer is overruled with costs.

*A. Kellogg,* for the complainant. 1. The demurrer being to the whole bill, if it is not well taken as to every part of the bill, it must be overruled. (*Laight* v. *Morgan,* 1 *John. Cas.* 49. *Le Roy* v. *Verde, Id.* 421. *Verplank* v. *Caines,* 1 *John. Ch. Rep.* 57. *Kimberly* v. *Sells,* 3 *Id.* 467. *Higinbotham* v. *Burnett,* 5 *Id.* 184.) There is no reason for a different rule in relation to multifariousness. All that is to be found in the books is an observation of Sir Samuel Romilly, arguendo, (18 *Vesey,* 72,) and repeated with approbation by Chancellor Kent, (6 *John. Rep.* 156,) that the objection to a bill, as multifarious, would be at an end if the answer to that objection was admissible ; that if all the parties were concerned in one transaction, all but that one might be left out of consideration. A party might demur to that part of the bill, in which he was not concerned, as multifarious. It is not indispensable to demur to the whole bill as multifarious, when there are portions of it in which he is jointly connected with another. A party might have the benefit of a demurrer for multifariousness, by limiting it to the particular part alleged to be multifarious. And in all the reported cases where a demurrer has been allowed, for multifariousness, it will be seen that in no part of the bill were the defendants jointly interested.

2. The bill contains several allegations in which the defendants are jointly concerned in every respect, to which therefore the demurrer is inapplicable, and not well taken. The bill will be found to contain all the averments necessary in a creditor's bill, by the 189th rule, and so far is a good bill to both defendants jointly. All persons interested must be made parties, otherwise the defendants may demur for want of parties. (*Cooper's Pl.* 185. *Bailey* v. *Inglee,* 2 *Paige,* 278.) The revised statutes authorize the joinder of these defendants as parties to the bill. (2 *R. S.* 174.) By section 38, the right is expressly given to the judgment and execution creditors to

file their bill against the defendant and any other person, to compel the discovery, &c. of the defendant's property and trusts. The above provision is much enlarged by a subsequent statute. (*Laws of* 1833, *p.* 17, *ch.* 14.) This statute shows that a defendant must answer the bill, and deny all the fraudulent charges, without regard to his co-defendants. Creditors' bills have ever been an exception to the general rule as to parties defendants. (2 *Mad. Ch. Rep.* 152, 3.) But it may be said that the right in this case accrued before the revised statutes. It is perhaps sufficient to say, in answer to this, that the remedy given by the revised statutes is applicable to the right, even if such was the fact as to time. Without reference to the statutory provisions, the bill, both as to form and substance, is fully sustained by the adjudged cases in equity. In *Whalley* v. *Dawson,* (2 *Sch. & Lef.* 367,) Lord Redesdale declared the rule to be, that where there was a general right claimed in the bill, and covering the whole case, the demurrer would not be allowed, though the defendants had separate and distinct rights. This rule was fully adopted by Chancellor Kent in *Brinkerhoff* v. *Brown,* (6 *John. Ch. Rep.* 139, 156,) a case in which, if in any reported decision, the charge of multifariousness would prima facie seem to apply. Chancellor Kent declares the principle to be, that a bill against several persons must relate to matters of the same nature, and having a connection with each other, and in which all the defendants are more or less concerned, though their rights in respect to the general subject of the case may be distinct. This case had less in it to justify the joinder of the defendants therein than the one now before the court ; and in many of its aspects, both as to discovery and relief, the several defendants had no connection whatever. But the case of *Fellows* v. *Fellows,* (4 *Cowen,* 682,) decided unanimously in the court of errors, is conclusive on this point. The specific charges against the defendants are entirely distinct and unconnected, and centre but in one point, viz. the defrauding the complainants of their debt. It is a case precisely like ours in every material fact, and the demurrer was in the same form exactly. I refer especially to the opinions of Chancellor Sanford and of Chief Justice Savage.

1835.

Boyd
v.
Hoyt.

The defendants are at liberty to assign verbal causes of demurrer at the hearing, but it is not to be allowed except upon payment of the costs of the demurrer on the record, and giving liberty to the complainant to amend. (3 *Paige*, 222, 233. *Id.* 440, 453.)

*F. G. Jewett,* for the defendants. The bill is bad for multifariousness. Multifariousness is defined to be, to demand by one bill several matters of different nature against several defendants. (*Mitford's Pl. 3d ed.* 147.) The court will not permit several plaintiffs to demand by one bill several matters perfectly distinct and unconnected against one defendant; nor one plaintiff to demand several matters of distinct natures against several defendants, which is termed multifariousness, or improperly confounding together distinct matters. (*Cooper's Pl.* 181, 2, 3. *Coe* v. *Turner,* 5 *Conn. Rep.* 91, per *Hosmer, Ch. J.*) Sir John Leach says, "In order to determine whether a suit be multifarious, or in other words contains distinct matters, the inquiry is not whether each defendant is connected with every branch of the case, but whether *plaintiff's bill seeks relief in respect of matters which are in themselves separate and distinct.* If the object of the suit be single, but it happens that different persons have separate interests in distinct questions which arise out of that *single object,* it necessarily follows that such different persons must be brought before the court, in order that the suit may conclude the whole subject." (*Salridge* v. *Hyde,* 5 *Mad.* 138.) .A bill seeking to enforce *different demands* against persons liable *respectively* is bad on demurrer. (*Saxton* v. *Davis,* 18 *Ves. Rep.* 72. *Whalley* v. *Dawson,* 2 *Sch. & Lef.* 367, 370.) Lord Redesdale says: "Where the *subjects* of the suit are in themselves *perfectly distinct,* it is a common ground of demurrer." *Hunn* v. *Norton, Hopk. Rep.* 344, 347 ; *Davoue* v. *Fanning,* 4 *John. Ch.* 199 ; *Brinckerhoff* v. *Brown,* 6 *Id.* 139 ; 1 *Vern. Rep.* 416, 463 ; 2 *Condensed Rep.* 439, *note;* and *Marcus* v. *Pebrer,* 3 *Simons' Rep.* 466, are full in support of this point.

The bill contains *two* or more distinct grounds of complaint against several defendants. It contains alleged causes of action against W. Hoyt, wholly disconnected with any act of

Parsel, his co-defendant, to wit : That Cyrus Howard was indebted to E. Hoyt, which Walter Hoyt has since received, or now has securities therefor ; that when E. Hoyt moved to Ohio, he had considerable amount in ready money and debts due to him, which Walter Hoyt afterwards had received and converted to his own use ; that Walter Hoyt, since the year 1822, has received from various persons who were indebted to to E. Hoyt money to a large amount, and converted the same to his own use; that W. Hoyt had taken and received all and each of said debts, &c. as well as other gifts from E. Hoyt, without any bona fide or valuable consideration ; but that E. Hoyt transferred the same to W. Hoyt, or suffered him to take and collect the same, and keep the same from E. Hoyt's creditors. And that in the removal and sale of the buildings, timber, fences, rails and other property attached and growing out of the freehold, from the said lands of E. Hoyt, which were sold and purchased by the complainants, E. Hoyt and W. Hoyt proceeded in defiance of the complainants' rights to their great injury, with a full knowledge of their rights. And the complainants claim and insist that as to the proceeds and avails of all the buildings, trees, timber, rails and fences which have come to the hands of said W. Hoyt, he is bound to account directly to the complainants for the same with interest ; and as to all the other money, property and things in action received by W. Hoyt, the complainants claim they are entitled to the same with interest, to be applied in satisfaction of the balance due on their said judgment. It has, therefore, *two distinct objects*, as against the defendant W. Hoyt, and comprises *two distinct subjects of complaint.* 1. The complainants claim compensation for the injury done the freehold, claiming it as purchasers, or as having had a lien by judgment; and that such compensation be *paid* to them without reference to any balance due to them on their judgment. 2. They claim the avails of the personal property and things in action, *other* than that received from the avails of the buildings, &c. transferred to the defendant W. Hoyt by E. Hoyt, for the purpose of defrauding his creditors, and which W. Hoyt received without consideration to be applied in satisfaction of the balance due on the complainants' judgment. The bill

also alleges that the defendant Parsel has possessed himself of property of E. Hoyt fraudulently ; and it claims an account of the same, and payment to be applied on the complainants' judgment. But no relief is prayed against him as to the injury done to the freehold.   The bill does not state a case of *indebtedness on the part of the defendants, or either of them, to E. Hoyt, the judgment debtor, or that they hold any property in trust for him, either express or implied*—the peculiar grounds of a creditor's bill. (2 *R. S.* 173, 4.)  And, besides, the averment is not made in conformity to the 189th rule of this court.  That rule requires the bill to allege that the judgment debtor has equitable interests, things in action, &c. to the amount of $100.  (3 *Paige's Rep.* 505.)   The bill does not attempt to charge the defendants as uniting in any *act* complained of ; but expressly disconnects them in every act, unless the formal allegation of confederacy and combination shall be deemed such.   That is denied by the answer of the defendants.   The case of *Fellows* v. *Fellows* does not decide any new principle or overrule any English rule ; it merely applies the principles of law, long settled, to the facts in the case.   It is evident that the bill in this cause claims two distinct rights, disconnected and not dependant upon each other, against several defendants who have not a common interest in both claims.

The rule that where a demurrer is put in to the whole bill, and any part of the bill requires an answer, the demurrer must be overruled, is not applicable to a demurrer to a bill for multifariousness.   For, in the language of Sir Samuel Romilly, (18 *Vesey*, 72,) if that were sufficient, the objection to a bill as multifarious could never be sustained.   The same doctrine is held in the case of *Brinckerhoff* v. *Browne*, (6 *John. Ch. Rep.* 156 ;) also by Judge Sutherland, in *Fellows* v. *Fellows*, (4 *Cowen's Rep.* 701.)  " It might be asked, if a bill is multifarious, does it not necessarily contain *parts*, each of which, if it stood alone in one bill, would require an answer ?  The rule seems to be well settled, that several defendants must have a common interest, *not in a particular item or insulated charge in the bill,* but in the point in issue in the cause."  (4 *Cowen's Rep.* 701.  18 *Vesey*, 72.)

THE CHANCELLOR. So far as this bill seeks to reach the property of E. Hoyt, which has come to the hands of these defendants, respectively, without consideration, and to have the same applied in satisfaction of the balance due on the complainants' judgment, there is no foundation for the objection that the bill is multifarious, because both defendants are joined in the same bill. The decision of the court for the correction of errors in the case of *Fellows* v. *Fellows*, (4 *Cowen's R.* 682,) settles the principle that where a debtor conveys different portions of his property to several persons, in fraud of the rights of his creditors, a creditor who has obtained a judgment, and placed himself in a situation to enforce his right against the debtor and his fraudulent grantees, may file a bill against the grantor and all the grantees jointly ; to reach the property conveyed to each, and have the same applied in satisfaction of his judgment. Whatever doubts, therefore, may have existed on the subject previous to this decision of the court of dernier resort, this must now be considered as the settled law of this court. The same principle is applicable to the case of a complainant who proceeds as a judgment creditor, after the return of an execution unsatisfied, under the thirty-eighth section of the title of the revised statutes relative to the court of chancery. (2 *R. S.* 173.) Although the term person is used in the singular number in this section, yet, by referring to the eleventh section of the act concerning the revised states, (2 *R. S.* 778,) it will be found that the word thus used in the singular, may be construed to include a plurality of persons, unless there is something in the subject or context repugnant to such a construction. I have no doubt, therefore, that two or more persons holding the property of the judgment debtor under different conveyances, or becoming indebted to him at different times, or for distinct sums, may be joined with him as defendants in a creditor's bill, under this provision of the revised statutes. And if, for any cause, it becomes impossible to make the debtor himself a party, to a bill to obtain satisfaction of the judgment out of his estate in the hands of third persons, and the creditor has a right to institute a suit in chancery for that purpose, I can see no good reasons for permitting him to join several persons in the same suit, in the former case,

1835.

Boyd
v.
Hoyt.

which are not equally applicable to the latter. Where the object of a suit is single, but different persons have, or claim, separate interests in distinct or independent questions, all connected with and arising out of the single object of the suit, the complainant may bring such different persons before the court, as defendants; so that the whole object of the bill may be obtained in one suit, and to prevent further unnecessary and useless litigation. And if the sole object of the present bill was to reach the property, in the hands of these several defendants, which ought to be applied in satisfaction of the balance due on the complainants' judgment, and to have it thus applied, I should find no difficulty in sustaining the decision of the vice-chancellor in overruling these demurrers.

But it is also objected, on the part of the appellants, that the complainants in this same bill are seeking to recover against the defendant W. Hoyt a distinct and independent claim; for damage done to the real estate of E. Hoyt, of which they were the purchasers at the sheriff's sale, between the time of such sale and the expiration of the time allowed by law for redemption, when they were entitled to the deed from the sheriff. These damages they do not seek to have applied in payment of the balance due them upon the judgment; but they claim the same in a distinct and independent right, as the purchasers of the land, upon which land such waste was committed in fraud of their rights as purchasers at the sheriff's sale. And if such waste was committed after the sale, either by W. Hoyt, or his father, as alleged in the bill, there is no doubt as to the right of the complainants to claim the proceeds of such waste, in the hands of W. Hoyt, who has received the same without consideration, or with full knowledge of the complainants' equitable right to such proceeds; to recompense them for the injury which they have sustained as purchasers. The avails of such waste cannot properly be applied in satisfaction of the balance due on the judgment; for the complainants' right to the proceeds of the waste would have been the same, if the balance of the judgment had been fully paid by the debtor. It will be seen, therefore, that the claim set up in this part of the bill is for a distinct and independent cause of action, against W. Hoyt, in which the defendant Roeliff Par-

sel is in no way implicated. And it is entirely disconnected with the complainants' claim to have the balance of their judgment satisfied out of the property of E. Hoyt, in the hands of the respective defendants. This, then, is not a bill for a single object, where the separate interests of different defendants are connected with, or properly arise out of such single object of the suit. It is a bill in which the complainants set up two distinct and independent claims, or grounds of action ; as to one of which claims there is no foundation or pretence for making the defendant Parsel a party to the litigation. But as to the other claim the defendants were properly made parties, although their interests, even as to that claim, were separate and distinct. The bill, in this respect, is clearly multifarious.

The form and effect of a demurrer to a bill in chancery for multifariousness, is substantially the same as a demurrer to a declaration at law for a misjoinder of actions, or of different causes of action, which cannot be properly litigated in the same suit. The demurrer, in either case, goes to the whole bill, or declaration. (*See Mansell's Law of Dem.* 11. *Gibbs* v. *Clagget,* 2 *Gill. & John. Rep.* 29. *Johnson* v. *Anthony,* 2 *Molloy's Rep.* 373.) And where a joint claim, against two defendants, is improperly joined in the same bill with a separate claim against one of the defendants only, either or both of the defendants may demur for multifariousness. (*Ward* v. *The Duke of Northumberland and the Earl of Beverly,* 2 *Anst. Rep.* 469.)

The decretal order of the vice chancellor is erroneous, and must be reversed with costs. The demurrers must be allowed, and the complainants' bill dismissed.