The Assistant Vice-Chancellor.
The separate demurrer to that part of the bill which seeks a discovery and account of the rents of the real estate, prior to the death of the complainant’s father, John Jordan Latting, is undoubtedly well taken.
This is also true of the personal property of J. J. Latting, alleged to have come to the hands of the defendant’s father, and in respect of the timber said to have been sold by the latter before the former’s death.
The complainant has shown no title to these demands. As one of the next of kin of J. J. Latting, or as his sole next of kin, he has no right or capacity to institute suits for demands due to his father. No one but the executor or administrator of the latter, can prosecute such demands, in the courts of this state.
There is another ground of demurrer which goes to the whole bill, and I will proceed to its examination.
The bill charges, that Charles Latting died in May, 1842, and" the defendant, (one of his sons,) succeeded him in the possession of the real estate, and the receipt of its rents and profits. That in July, 1842, the defendant was appointed administrator of his father, and received the latter’s personal property, to an amount more than sufficient to pay all his debts. The bill prays an account from the defendant, as administrator, of the rents and profits received by the father in his life time ; also, of the produce of timber sold by him, and the personal property which came to his hands ; and an account of the rents and profits received by the defendant individually, since the death of Charles Latting ; and for payment by the defendant, as administrator, and individually, of the respective sums which may be found due on such accountings.
The defendant demurs to the whole bill, on the ground of multifariousness, and the misjoinder of these causes of action ; insisting that a demand against him individually, cannot be joined with one against him as the administrator of his father, in respect of transactions in which he had no share or interest.
Multifariousness in a bill, is the improperly joining therein, distinct and independent matters, thereby confounding them ; *35 as, for example, the uniting in one bill, of several matters, perfectly distinct and unconnected, against one defendant. (Story’s Eq. Pl. § 271.) Where the parties to the cases or claims asserted in the bill are the same, but the claims are of so different a character, that the court will not permit them to be litigated in one record; it is, more properly speaking, a misjoinder of causes of suit, though usually termed multifariousness. (Ibid. § 530 ; 1 M. & Cr. 603, per Lord Cottenham.) The leading case, which is applicable to the objection as here taken, is Ward v. The Duke of Northumberland and Lord Beverley, 2 Anstruther, 469. The bill sought an account against the defendants, as executors of the late Duke, and against one of the defendants, (then Duke ;) for an account in respect of certain covenants in a lease to the plaintiff, executed by the late Duke, and continuing under the defendant. Part of the account claimed, accrued during the lifetime of the late Duke, and a part after his death. The defendants demurred separately to the bill for the misjoinder of these causes of action, and both demurrers were allowed. In respect of the Duke, the court said, “he is, indeed, interested in every part of the bill, but in different characters. In the one he can only be sued jointly with his co-executor, in the other, he is perfectly distinct from him. The two demands against tile Duke, are, indeed, of a similar nature, but perfectly distinct and unconnected. As one of the executors of his father, he has a right to object to that estate being implicated in litigation concerning his own affairs.”
This case has been ever since regarded as adjudging that a bill cannot blend a demand against the defendant as executor, with one against him in his own right.
Thus Lord Cottenham, in Campbell v. Mackay, 1 M. & Cr. 603, says, the defence of the Duke, as sustained in Ward v. The Duke of Northumberland, was, that it was improper to join in one record, a case against him as representative of his father, and a case against him arising out of transactions in which he was personally concerned. And see 1 Daniell’s Ch. Pr. 446 ; Calvert on Parties to Suits in Equity, 89. Also, the Attorney General v. The Goldsmith’s Company, 5 Simons, 675, per Vice-Chancellor Shad well. Mr, Daniell says, a plaintiff cannot join *36 in his bill, even against the same defendant, matters of different natures, although arising out of the same transaction. (1 Dan. Ch. Pr. 449.)
The rule has been adopted in this state. In Johnson v. Johnson, 6 J. C. R. 163, the bill united' charges of adultery and of cruel and inhuman treatment, and Chancellor Kent decided that the bill could not be sustained. He referred to Ward v. The Duke of Northumberland, on the Duke’s demurrer, as having decided the same principle. The case of Decamp v. Decamp, 1 Green’s Ch. R. 294, is to the same effect. In Hunn v. Norton, Hopk. R. 374, Chancellor Sanford said that a demand against the defendant, as executor, could not be united with a personal debt from him to the complainant, without his consent.
In Fellows v. Fellows, 4 Cowen, 701, Judge Sutherland, speaking of the case of Ward v. The Duke of Northumberland, says the bill was held bad, not because a considerable part of it related merely to the private concerns of the Duke, with which Lord Beverley had no concern ; but it was bad, as against the Duke alone, because, although he was interested in every part of it, it was in different characters.
I will refer also to Bryan v. Blythe, (4 Blackford’s, Indiana, Rep. 249, 251;) and Story’s Eq. Pl. § 271.
The case of Varick v. Smith, (5 Paige, 137, 160,) cited by the defendant, does not conflict with these authorities. The chancellor there held, that a bill might contain two good causes of action, arising out of the same transaction, in which all the defendants are interested in the same claim of right, and the relief asked for in relation to each, is of the same general character.
Here the possession and acts of Charles Latting, are a different transaction from those of Joseph Latting. The latter is interested personally and exclusively in the claim against him ; and it does not appear, that he has any personal interest in the claim against Charles Latting.
The reasons for the rule are as applicable to the case of a sole defendant, as to that of several defendants. The two claims in this case, require totally distinct examinations and accounts. They are wholly unconnected with each other. The defence *37 which Charles Latting had, may be wholly different from that which the defendant has to the portion of the bill against him personally. This would lead to distinct issues and separate proofs, and to the probability of confounding those applicable to one defence with those pertaining to the other. The litigation of the claim against him as administrator, may be productive of long and harassing delay, while the other claim, if it stood alone, might be speedily and economically disposed of. And when brought to a close, the decree would be entirely distinct, as applicable to the two claims.
Courts of equity, as was remarked by Chancellor Kent, are anxious to preserve some analogy to the simplicity of declarations at common law. It is well settled that at law, a demand against a defendant individually, and one against him as executor or administrator, cannot be joined in the same declaration. (Myer v. Cole, 12 Johns. 349; Reynolds v. Reynolds, 3 Wend. Rep. 244.)
The reason of the thing, as well as the authorities, are against the union of the, distinct demands attempted by this bill. And as the demurrer goes to the whole bill, it must be dismissed with costs. (Boyd v. Hoyt, 5 Paige, 65, 79.)