VAN INGEN (LIVINGSTON v.). See Case No. 8,420.

VAN INWAGEN (SCARLETT v.). See Case No. 12,437.

VAN KIRK (JONES v.). See Case No. 7,500.

## Case No. 16,860.

VAN KLEECK v. MILLER et al.

[19 N. B. R. 484.] 1

District Court, S. D. New York.    April 29, 1879.

BANKRUPTCY—INVALID PREFERENCE—CONVEYANCE TO WIFE—ADJUDICATION BY STATE COURT—CONCLUSIVENESS.

[1. Several creditors may, with the aid of their debtor, conspire to get an advantage over other creditors by a voluntary preference, provided the means used are not unlawful, and the preferences are made more than two months before the filing of a petition in bankruptcy.]

[2. A sale by a debtor will not be avoided because the purchaser was aware of the intention of the seller to prefer certain of his creditors by the use of the proceeds of the sale.]

[3. The fact that a wife allows her husband to have and use her money in his own business indefinitely does not affect a claim by her, as against other creditors, after he becomes bankrupt.]

[4. The conclusiveness of an adjudication by a state court as to the distribution of a certain fund under an assignment for creditors is not affected by the fact that this involves a decision as to the legal rights of the parties as affected by the United States bankruptcy law.]

John P. H. Tallman and A. H. Wilkinson, for complainant. O. D. M. Baker, for defendants.

CHOATE, District Judge. This is a suit in equity, brought by the assignee in bankruptcy of the defendant James D. Miller to set aside various transfers and assignments of parts of his estate prior to the filing of the petition in bankruptcy, and to recover from the several defendants the same or their value, or the amounts of money alleged to have been paid to them in fraud of creditors, or in violation of the provisions of the bankrupt law [of 1867 (14 Stat. 517)]. The bill alleges a combination or common design on the part of the defendants to effect the fraudulent and unlawful disposition of the estate, the several portions of which came to the several defendants. Objection was made to what is called by the counsel for the defendants the improper joinder of six separate causes of action, and a motion was made after the proofs were in that he elect which cause of action he would proceed upon, and that the bill be dismissed as to the rest; there being, as it is claimed. an entire failure to prove that the several alleged illegal transfers and payments were made in pursuance of a common design on the part of the defendants; but the disposition made of the case renders it unnecessary to consider this point. A bill is not multifarious, though brought to recover from several defendants different portions of the estate of a debtor, if the alleged illegal transfers were the result of a common purpose on the part of the defendants to dismember the estate. Boyd v. Hoyt, 5 Paige, 65; Platt v. Preston [Case No. 11,219].

The defendants who have answered the bill. and against whom the principal relief is sought, are Alfred Stall. the alleged fraudulent grantee of a farm in the town of Milan; Emily E. Morse. the daughter of the bankrupt, an alleged fraudulent grantee of a house and lot of land in Stanford. Dutchess county; William Vail and Henry Tallmadge former creditors of the bankrupt. to whom it is alleged that he transferred parts of his estate by way of preference; Pamelia Miller. the wife of the bankrupt, to whom it is al-

1 [Reprinted by permission.]

leged that he transferred. and suffered to be transferred. by means of a levy on execution. parts of his property, either without consideration and in fraud of creditors, or, if there was a consideration in an antecedent debt, by way of an illegal preference; and Daniel W. Guernsey, to whom it is alleged an illegal assignment of a chose in action was made as security for a hundred dollars, without consideration, and fraudulently as to creditors.

The petition in bankruptcy was filed by the creditors of James D. Miller on the 15th of May, 1877. Prior to his bankruptcy, Miller was a farmer, living at Stanford. Dutchess county. He owned a house and lot in that place, on which he lived: a farm in the adjoining town of Milan; a wood lot; a house and lot in the city of Poughkeepsie; some bonds and mortgages and personal chattels: and he had a claim against his son, John H. Miller, for money lent. There was also standing in his name as owner another house and lot in Stanford. which was occupied by his daughter. Mrs. Morse. It had been purchased wholly with funds belonging to her, and the title had been taken in his name at her request. He was indebted to the defendant William Vail. his brother-in-law, in the sum of three thousand dollars; to the defendant Henry Tallmadge. his cousin, in the sum of two thousand dollars. He was liable as maker or endorser on notes used by his son. John H. Miller, in the son's business and for his accommodation, for about ten thousand dollars. He had been married about twenty years, and soon after his marriage received from his wife about one thousand four hundred dollars of her money, no part of which he had ever repaid, and on which he had paid no interest. He had also received on account of his wife during about twenty years the interest on a fund of about three thousand two hundred dollars held by trustees for her benefit, no part of which he had ever paid her. Within a few days before the 8th of February, 1877. he had represented himself to some of his creditors to be entirely solvent, and to be worth fifteen thousand dollars over and above all his debts. Shortly before the same day it became known that his son, John H. Miller, was in financial difficulties, and unable to meet his business obligations. This became known also to the defendant Pamelia Miller, the wife of the bankrupt, and on the 8th of February John H. Miller made a general assignment for the benefit of. his creditors to the defendant Guernsey, who is an attorney at law, having an office at Poughkeepsie, but living in the country near the bankrupt. Miller. On that day Guernsey was at Miller's house and there met Miller and his wife, and the defendant Vail. On the same day the bankrupt executed a deed conveying to Mrs. Morse the house and lot which had been purchased with her funds, and the defendant Pamelia Miller joined in the deed to release her dower. On the next day suits were commenced

against the bankrupt by Mrs. Miller. Vail, and Tallmadge, to recover their several alleged debts. To these actions the bankrupt interposed no defence. At or about the same time an action was commenced against the bankrupt by another creditor on one of the accommodation notes issued by John H. Miller. The defendant Guernsey was the attorney for the plaintiffs in all these actions. On the 8th of February, Miller transferred to his wife two bonds and mortgages, on which the amount due was one thousand five hundred dollars; the same day, or the next day, other property worth six hundred and forty dollars and fourteen cents: and in the complaint in her action these sums were credited and a balance of five thousand seven hundred and seventy-eight dollars was claimed, made up of one thousand four hundred dollars. with interest from April 1, 1855; divers sums, amounting to four thousand two hundred and sixty-two dollars and fifty cents, loaned between April 1, 1855, and February 9, 1877, of which had been repaid only two thousand one hundred and forty dollars and fourteen cents, this credit being in fact intended for the two bonds and mortgages and other property above referred to. February 24, 1877, the bankrupt transferred his farm in Milan to the defendant Stall for a consideration of five thousand five hundred dollars, which was paid in a bond and mortgage, made payable at Miller's request, to the defendant William Vail, for four thousand five hundred dollars and a note for one thousand dollars. These securities were delivered by Stall to Miller on the 24th of February, when the deed was delivered. The conveyance was made in pursuance of an oral agreement between Miller and Stall made a week or more before that day, but the form of the mortgage, as payable to Vail, was not mentioned until the day of the transfer. Stall entered into possession under his deed, went into the place to live April 2d, and since that time has remained in possession. His deed was not recorded until June 6, 1877. On the 2d of March judgments were entered against Miller in the actions brought by his wife, Vail, and Tallmadge. but, before the judgments were entered, Miller had transferred to Tallmadge in payment of his debt the note for one thousand dollars received from Stall and a note of Mrs. Miller, his wife, for one thousand one hundred and five dollars, the two being together the amount of Tallmadge's claim, and he had also transferred to the defendant Vail the bond and mortgage for four thousand five hundred dollars received from Stall in settlement of Vail's claim, taking back from him Vail's note for one thousand three hundred and twenty-six dollars, the excess of the bond and mortgage over Vail's claim. This note was given to Mrs. Miller in consideration of her giving the note to Tallmadge. On these payments being made known to the defendant Guernsey, he had the judgments in favor of Tallmadge and

Vail satisfied of record. An execution was issued on the judgment in favor of Mrs. Miller, under which a levy was made on the house and lot where Miller lived, and they were sold on the execution and bid in by Mrs. Miller for three thousand dollars, and Miller and his wife have ever since continued to live there as before. On the 24th of March, Miller made an assignment of his interest in the dividend coming from the estate of John H. Miller under the voluntary assignment for the benefit of his creditors—First, to the defendant Guernsey, for the amount of one hundred dollars; and, secondly, to his wife, for the balance of her claim against him; and, thirdly, to another creditor. The amount of this dividend, though not then ascertained, afterwards proved to be one thousand and eighty-two dollars and seventy cents.

The effect of these various transfers and operations undoubtedly was that all the property of Miller available to pay his debts, or that he was possessed of, had gone to his three creditors, Vail, Tallmadge and Mrs. Miller, or been transferred to his daughter Mrs. Morse, and there was nothing left for his other creditors; and I think the testimony tends strongly to show that from the 8th day of February, when these transactions commenced, the defendants Vail, Tallmadge, and Mrs. Miller knew that Miller was unable, in consequence of his son's failure, to pay all his debts, and that these transactions were designed to secure and prefer Vail, Tallmadge, and Mrs. Miller over the other creditors, and that, so far as they severally took part in these operations, they were acting upon this common purpose and design; but so far as the transfers complained of prior to the 15th of March, 1877, were merely transfers in payment and satisfaction of the debts of Miller, there is nothing in the bankrupt law making such preferences unlawful; the same having been made more than two months before the filing of the petition in bankruptcy. There is nothing in the laws of New York forbidding such preferences, nor anything in the laws of the state or of the United States making it unlawful for several creditors, with the aid of their debtor, to conspire or combine together to get an advantage over other creditors by and through such a voluntary preference, provided that the means used are not unlawful, and subject, of course to the preferences being avoided if it shall turn out that within two months thereafter a petition in bankruptcy shall be filed. The evidence undoubtedly tends to show on Miller's part an intent to prefer Vail and Tallmadge, and there is evidence tending to show that they had such knowledge of the condition of his affairs that if the transfers had been within two months of the bankruptcy they would be avoided under Rev. St. § 5128, but this is the utmost that the testimony shows as to the transfers to these defendants. No case is made against them under Rev. St. § 5129, which avoids transfers and payments intended to prevent the property from coming to the assignees, or being distributed under the bankrupt law, or to evade its provisions. This section includes the common case of voluntary conveyances, payments, and transfers to conceal and cover up property, or upon secret trusts for the benefit of the debtor when he is insolvent or in contemplation of insolvency or bankruptcy; but it does not include cases where the real and actual intention is to pay debts, however obnoxious the transaction may be to the provisions of section 5128, as preferences. Now in the present case, all the acts of these two parties in connection with the transaction complained of, as well as those of the debtors in relation to the transfers to these two creditors, tend only to show a purpose to get these debts paid. There is no evidence which would warrant a finding that what these two creditors took they took upon any secret trust, or for the benefit of anybody but themselves, or otherwise than in payment of their claims, and as these transfers to them were more than two months before the filing of the petition the bill must be dismissed as to them.

As to the conveyance of the house and lot to Mrs Morse, it was clearly shown by the testimony that the property had been purchased with her money, and for convenience and at her request the title had been taken in the name of the bankrupt. Nor was this with any design to deceive or defraud creditors. Although the laws of New York may not recognize and enforce such trust as against the party so holding the legal title yet there is nothing in the laws of the state which forbids or makes unlawful, or holds to be in fraud of creditors, the voluntary performance of the obligation to make a conveyance in pursuance of such a trust. When the conveyance is made it rests upon and is supported by a valuable consideration, namely, the money received. But the most unfavorable view that can be taken of the transaction is that it was a preference, for the bankrupt was undoubtedly indebted to Mrs. Morse for the purchase money. If the property is to be regarded as belonging to him, and the transfer having been made more than two months before the filing of the petition, it is not void as a preference, under Rev. St. § 5128. The bill, as to this defendant, must be dismissed.

The claim made against the defendant Stall is that the Milan farm was conveyed to him for a totally inadequate consideration; that it was worth eight thousand dollars, and was sold to him for five thousand five hundred dollars; that he was a party to the combination or conspiracy to divest the bankrupt of his property for the benefit of a few of his creditors; that the conveyance was kept secret, the deed not being recorded till June 6th; and that the transfer was, in fact, fraudulent as against creditors, as being intended to aid the bankrupt in secreting, concealing, and fraudulently disposing of his property.

Stall, the purchaser, undoubtedly knew that Miller was selling this farm because he was in financial difficulties. He was informed by Miller that he would not probably be able, except for a short time, to convey a good title. What took place at the time the deed was delivered was notice to him, probably,·that the proceeds of the farm were being used by Miller in paying some of the creditors of Miller, but beyond this I think the evidence does not warrant the conclusion that he knew or had reasonable cause to believe that Miller was intending so to dispose of his property as to exclude any of his creditors from the benefit thereof, or that he was contemplating bankruptcy or insolvency. And even if he was fully aware of the intention of Miller to prefer certain of his creditors by the use of the proceeds of the sale of this farm, that would constitute no ground for avoiding the sale; certainly not as the preferences were not themselves unlawful, as has hereinbefore been held, unless the sale was fraudulent on other grounds. Was the sale, then, fraudulent as not made in good faith, or as being a cover for a secret trust, or as designed to aid Miller to defraud his creditors, or by reason of inadequacy of consideration? Gross inadequacy of consideration is, in itself, very strong evidence of an intention contrary to that which appears on the face of the conveyance. It is a circumstance strongly pointing to an intention to create a secret trust, or to cover up, conceal, and keep from creditors the property of the grantors. But in this case the weight of the testimony is, I think, that Stall gave a reasonably fair price for the farm. Miller was anxious to sell, and Stall knew it. Stall was, in fact, looking for a farm to hire or work on shares, and Miller offered him this farm for five thousand five hundred dollars, and Stall accepted his offer. Miller had put it in the hands of a real-estate broker to sell, and the broker had held it at eight thousand dollars, but found no purchasers. Miller himself had offered it to another party at five thousand five hundred dollars, but he had refused to buy. Persons familiar with the value of land in the neighborhood testified that they considered the price which Stall gave all that it was worth. There was evidence that Miller had represented it shortly before as worth eight thousand dollars, but such declarations by an owner, even if not affected or induced by some motive to exaggerate the value at the time, are of scarcely any weight as evidence. Very few sales of real estate within the last six years would stand if the fairness of the price were to be tested by the prior expectations or declarations of the owner as to the value of the property. There is not the slightest reason to believe from the evidence that the sale was not a real sale as between the parties. or that the land was held by Stall in any way or to any extent for the benefit of Miller, or upon any secret trust whatever. Even if he bought it for a low price, taking advantage of the necessities of Miller, it has

been held too often that this is not in itself a fraud to render it necessary to cite authorities. Certainly the inadequacy of price is not proved by the testimony, and if it existed was not so gross as to base upon it any charge of fraud. The failure to record the deed does not affect his title. The deed was not kept off the record in pursuance of any request of Miller. The failure to record it appears to have been accidental, or the mere result of carelessness. The record was not necessary to the passing of the title, nor does the failure to record make the deed void or fraudulent as to creditors. The case is, therefore, unlike those in which, by the law of the state, a conveyance unrecorded or unfiled is conclusively and absolutely void as to creditors, as in the case of an unfiled chattel mortgage by the law of New York. Platt v. Preston, supra. Even an agreement on Stall's part with the bankrupt not to record the deed, or to keep it secret, would, it seems, not make the conveyance void, the object of the bankrupt law not being "to prevent false credits," but to secure "ratable distribution" of the assets of the bankrupt. Sawyer v. Turpin, 91 U. S. 121. The bill must, therefore, be dismissed as to this defendant.

The case against Mrs. Miller, the wife of the bankrupt, as to all property transferred to her more than two months before the filing of the petition in bankruptcy—that is to say, all except the transfer of the dividend coming from the estate of John H. Miller—depends on the question whether the bankrupt was indebted to her to the extent of the property so transferred. If he was so indebted, the transfers were only preferences, and, being more than two months before the bankruptcy, they cannot be impeached under Rev. St. § 5128. Assuming the fact of indebtedness, no different intent on Miller's part or on hers is shown from that which actuated the transactions with Vail and Tallmadge, already fully discussed. The amount of the property so transferred, including that seized on her execution on the 2d of March, is claimed by the plaintiff to have been in value somewhere from five thousand six hundred and fifty dollars to six thousand eight hundred and fifty dollars. The amount of the judgment recovered by her, after crediting two thousand one hundred and forty dollars of this property, was five thousand seven hundred and ninety-eight dollars and thirty-four cents. While a judgment suffered by default by a bankrupt is not conclusive on the assignee, either as to the fact or amount of indebtedness. where the question is of an intended fraud against creditors (Humes v. Scruggs, 94 U. S. 22), yet it is obvious that if this judgment was properly rendered, upon the facts as they actually existed there was an indebtedness exceeding the amount of the property transferred to Mrs. Miller. The payment of the sums of one thousand four hundred dollars and three hundred and forty

dollars of her money to her husband soon after their marriage, and the subsequent receipt by him of the income of the fund held in trust for her benefit during a period of nearly twenty years, were proved, not only by the testimony of the bankrupt and his wife, but by other disinterested and unimpeached witnesses. There was no evidence tending to control the testimony of the bankrupt and his wife that for these original payments he promised to give her notes whenever she should request it, nor was there any evidence tending to control their testimony that none of these moneys had ever been repaid. There was no evidence from which it could be justly inferred that she had ever given these moneys, or any of them, to him, and I do not doubt that, under the laws of New York, she was, upon the proofs here exhibited, entitled to recover them, with interest, as moneys lent. Her claim was not, in my judgment, seriously affected, or its bona fides impaired, by the statement made by her, that her husband owed her one thousand four hundred dollars. Taking her whole testimony together, and making proper allowances for her age and unfamiliarity with business matters, and especially considering the proof adduced wholly independently of her testimony, it is evident that in this statement she referred to the sums first loaned, and that her testimony is not to be taken as a denial or disproof of any indebtedness for interest or subsequent loans to him. The facts that no note was ever given, and no request for repayment made, till he got into difficulty on account of his son's failure, are not, in my judgment, considering the relations of the parties, circumstances of sufficient weight to overcome the evidence of promises to repay, proved as to a part of these moneys, and implied by the law from the fact of their receipt as to the others. Until that event there was no occasion for taking security or insisting on payment. The case of Humes v. Scruggs, ut supra, is relied on by complainant's counsel as sustaining his position, that, if a wife allows her husband to have and use her money in his own business indefinitely, she cannot then claim it as against other creditors after he becomes bankrupt. The case does not sustain the point. The gist of that decision was that a conveyance by a husband to a wife, even several years before the commencement of bankruptcy proceedings, of property many times exceeding in value the indebtedness of the husband to the wife, will be held to be a fraud upon creditors, if made when he is hopelessly insolvent. In the particular case before the court the property was in value five times the amount of the debt, and the husband was, at the time of the conveyance, as his wife well knew, hopelessly insolvent. Under such circumstances it was entirely clear that the conveyance was a mere cover under pre-

tence of paying a debt due the wife for a voluntary settlement on her which the husband's financial circumstances rendered fraudulent, or else for a secret trust for his benefit in fraud of his creditors. The point of the decision is in these words of the court: "If the husband in a state of absolute bankruptcy conveys to his wife property fairly worth fifteen thousand dollars to twenty thousand dollars, with no present consideration passing, but with a recital of past indebtedness to her to less than a fifth of its value, the transaction is fraudulent and void as to creditors." In repelling the suggestion as unfounded that the wife's money had been invested in the purchase of the property so transferred, the court used this language: "If the money which a married woman might have had secured to her own use is allowed to go into the business of her husband, and be mixed with his property, and is applied to the purchase of real estate for his advantage, or for the purpose of giving him credit in his business, and is used for a series of years, there being no specific agreement when the same is purchased, that such real estate shall be the property of the wife, the same becomes the property of the husband for the purpose of paying his debts. He cannot retain it until bankruptcy occurs, and then convey it to his wife. Such conveyance is in fraud of the just claims of the creditors of the husband." This language is not to be deemed as asserting the doctrine that the wife whose moneys are so received by the husband ceases to be his creditor for the moneys so received, or forfeits, by what she has allowed the husband to do with the money, any of her rights as creditor in case of bankruptcy. The particular question under discussion was, whether, on the facts stated, a trust in the land itself, in favor of the wife, could be implied as against creditors, and this trust was held not to be established. The case does not establish any difference in the position of a bankrupt's wife as a creditor from that of any other creditor, nor does it establish the doctrine that the act of the wife or any other creditor in aiding the debtor to create or keep up a false credit, without any active fraud or misrepresentation to creditors,—that is, by the mere suffering or permitting him to use money or property as his, —is a fraud that the bankrupt law takes notice of as impairing the rights of a creditor, or his capacity to take and hold property in payment of his debt, even though it be a known preference, provided he obtains it more than two months before the bankruptcy. There is nothing in this case cited inconsistent with the case of Sawyer v. Turpin, cited above, which distinctly holds that no such doctrine is recognized by the court as the result of the bankrupt law. On the grounds, therefore, that these preferential transfers to Mrs. Miller were sustained by a valid consideration in an existing indebted-

ness, and were made more than two months before the filing of the petition, this part of the complainant's case against her wholly fails.

There remains to consider the transfer to Mrs. Miller on the 24th of March of the dividend coming from John H. Miller's estate. This was within less than two months before the bankruptcy, and might be impeached as an unlawful preference in this suit but for the proceedings in respect thereto had in an action in the state court, in which both Mrs. Miller and this complainant the assignee in bankruptcy, were parties. The material facts in relation to that other proceeding are that on the 25th of August, 1878, six months before this suit was commenced, the defendant Guernsey, as assignee of John H. Miller under the voluntary assignment, commenced an action in the supreme court of the state of New York against John H. Miller and his creditors entitled to the benefit of that assignment, for the settlement of his accounts and the distribution of the assigned fund. The complainant, as assignee in bankruptcy of James D. Miller, was made a party defendant, and appeared, put in an answer, and claimed the dividend belonging to James D. Miller, as his assignee in bankruptcy. Upon the trial it appeared that an earlier assignment had been made by the bankrupt to his wife, Mrs. Miller, and thereupon, by direction of the court, she was made a party defendant, and after she came in and put in an answer, claiming the dividend as belonging to her under the assignment from the bankrupt dated March 24, 1878, a further hearing was had, and the assignee in bankruptcy, complainant herein, and Mrs. Miller litigated the question of the validity of Mrs. Miller's assignment, this complainant insisting that it was void on the same grounds alleged and insisted on in this suit. After hearing the cause, that court decided and entered a decree sustaining the validity of her assignment. This complainant appealed from that decree to the general term of the same court, and the general term reversed the decree, holding that the assignment to Mrs. Miller was void as a preference, and a decree was entered accordingly in favor of this complainant. It is now insisted by the complainant that the state court had no jurisdiction to hear and determine this matter in controversy between himself as assignee in bankruptcy and this defendant, Mrs. Miller, on the ground that this court only has jurisdiction to hear and determine that question, and that all that the state court could properly do in the premises was to remand the fund to this court for the decision of this question. There is, however, no foundation for this claim. That suit was one of which the state court had jurisdiction. It had also jurisdiction of the parties. It was obliged, in the due course of its proceedings in that suit, to de-

termine which of the two parties before it was entitled to receive a certain portion of the fund to be distributed. Each claimed it. Their titles to it were conflicting. The mere fact that in the determination of this question it became necessary to pass upon the legal rights of the parties as affected by the provisions of the bankrupt law did not take away or impair the jurisdiction of the court, or prevent it from deciding to which of the two parties the dividend belonged. The laws of the United States, so far as they affect the rights of parties litigant in suits tried before a state court, are necessarily taken notice of and applied by those courts as are any other laws affecting those rights and binding on the parties. It is only very recently that the fact that a right arising under a law of the United States has been by act of congress made the ground for giving federal courts jurisdiction of actions to enforce such rights, and this circumstance has been only made by the act the ground for conferring this jurisdiction on the federal courts concurrently with the state courts. St. 1875, c. 137, § 1 [18 Stat. 470]. In many matters the bankrupt law gives the federal courts exclusive jurisdiction, but the case pending in the state court now in question was not one of them. Nor is there any statute of the United States which provides that the federal courts shall exclusively determine the question, however it may arise, whether an alleged transfer or payment is a fraudulent preference under the bankrupt law. The statute of 1874, c. 390, § 2 [18 Stat. 178], amending the bankrupt law, has no bearing on the question, because, whatever effect that statute may have in restricting the jurisdiction of the state courts, it applies only to actions for collection of the assets of the bankrupt. Brewers' & Maltsters' Ins. Co. v. Davenport, 10 Hun, 264; Olcott v. Maclean, Id. 277. The complainant, therefore, having in a prior suit litigated this very question with this defendant, and having there obtained a judgment in his favor, cannot maintain this bill for the same relief. See In re Dakin [Case No. 3,539]. And as to the defendant Pamelia Miller this bill must be dismissed, but without prejudice to any rights accrued or to accrue in said suit in the state court.

No case is made out against the defendant Guernsey. In his answer he disclaimed all interest in the dividend on John H. Miller's estate under the assignment to him, and upon the proofs it appears that in the suit above referred to he had, by his complaint and other proceedings, disclaimed and effectually estopped himself from claiming any such interest. Therefore this suit, as against him, was unnecessary, and the bill must be dismissed.

The defendant Martha R. Stall, wife of Alfred Stall, seems to have been joined only in order that she may be decreed to unite

with her husband in a reconveyance of the Milan farm. The case against her fails, as the conveyance to Alfred Stall is not to be set aside.

As to all the answering defendants the bill is dismissed, with costs.